RASHA STOKES *v.* CHRISTOPHER J. LYDDY ET AL.
(AC 22309)

Schaller, West and Shea, Js.

Argued October 28, 2002—officially released February 25, 2003

*Michael R. Denison*, legal intern, with whom was *H. Jeffrey Beck*, for the appellant (plaintiff).

*Michael C. Conroy*, with whom, on the brief, was *Jon S. Berk*, for the appellees (defendants).

*Opinion*

SCHALLER, J. This case presents an issue of first impression. We are asked to decide whether a landlord owes a duty, at common law, to a nontenant who, while at a location away from the leased premises, is bitten by a tenant's dog.

The plaintiff, Rasha Stokes, appeals from the summary judgment rendered by the trial court in favor of the defendant landlords, Christopher J. Lyddy and Barbara Lyddy. On appeal, the plaintiff claims that the court improperly granted the motion for summary judgment because (1) under general principles of premises liability, the defendants had a duty to protect her, and (2) the court should have recognized a common-law duty

by extending that duty to nonowners and nonkeepers of dogs. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's appeal. The defendants own an apartment building at 270 Gurdon Street in Bridgeport where Tawana Ruff and Shawn Ruff resided.[1] The plaintiff resided nearby at 280 Gurdon Street.

Tawana Pantoja, now Tawana Ruff, entered into the lease on or about January 1, 1996. The lease permitted the landlord to enter the leased premises to make inspections. At that time, Tawana did not own the dog in question, a pit bull.

On or about December 22, 1996, the Ruffs' pit bull escaped and attacked the plaintiff as she walked along a public sidewalk in the vicinity of 280 Gurdon Street. The attack did not occur on any portion or common area of the leased property. As a result of the bite, the plaintiff incurred medical bills in the amount of $260.

The plaintiff commenced this common-law negligence[2] action by writ of summons and complaint, made returnable on December 16, 1997, as a result of the bite that she received from the Ruffs' dog on December 22, 1996.[3] The plaintiff did not commence an action against the Ruffs.

On March 12, 1998, the plaintiff filed an amended complaint, claiming that the defendants were liable based on a theory of common-law negligence, wherein

---

[1] The Ruffs resided in a two bedroom, first floor apartment.

[2] The plaintiff filed a one count complaint alleging common-law negligence on the part of the defendants as opposed to a claim pursuant to the dog bite statute, General Statutes § 22-357. There is no claim that the defendants were owners or keepers of the dog pursuant to the statute.

[3] The plaintiff's complaint states that the dog bite occurred on December 21, 1996. The Bridgeport police department incident report indicates that the bite occurred on December 22, 1996.

the defendants allegedly had a duty to maintain the premises at 270 Gurdon Street in a reasonably safe condition, free from dangerous defects, and to exercise reasonable diligence in correcting known defects. The plaintiff claimed that the defendants had a duty to warn her of the dog's dangerous propensities and to take corrective action as necessary to prevent her from being harmed by the Ruffs' dog.[4]

In their answer, the defendants denied ownership of the dog and denied that they knew the Ruffs had harbored the dog in their apartment. The defendants also denied that they knew the dog had exhibited vicious propensities in the past. The defendants raised the special defense that if the plaintiff had been injured as alleged, such injury resulted from her having committed a trespass or tort or from teasing the dog.

The case was assigned for trial commencing on November 11, 1999. In accordance with Practice Book § 17-44, the defendants, on November 15, 1999, filed a motion for leave to file a motion for summary judgment, with the accompanying motion and memorandum of law, to be heard prior to trial.[5] The court granted the motion for leave to file the motion.

[4] Specifically, in her amended complaint, the plaintiff claimed that her injuries were caused by the carelessness and negligence of the defendants in that (1) the defendants permitted "the dog to be harbored on premises knowing that [the] dog had a vicious propensity, in that it had shown a propensity to attack other people on other occasions"; (2) the defendants "failed to maintain the premises in a reasonably safe condition, free from dangerous defects, and to exercise reasonable diligence in correcting known defects"; and (3) the defendants "failed to take measures to avoid injuries to other persons of defective, dangerous conditions on the premises."

[5] In their affidavits in support of their motion for summary judgment, the defendants state: (1) they were the owners of the premises at 270 Gurdon Street; (2) they did not reside at 270 Gurdon Street at any time after 1989; (3) Tawana Ruff entered into her lease in January, 1996; (4) the lease did not permit pets in the apartment; (5) when the lease began, the Ruffs did not own a dog; (6) the Ruffs never sought permission from the defendants to keep a dog in the apartment; (7) prior to December 21, 1996, the defendants did not know that a dog was being kept by the Ruffs in the apartment; (8) the defendants first learned that the Ruffs kept a dog in the apartment after

Pursuant to Practice Book § 23-61, the court referred the matter to a court annexed arbitration program. The parties appeared before an arbitrator, Michael S. Lynch, on December 21, 1999. The arbitrator filed his decision on April 18, 2000, in which he concluded that judgment should be rendered for the defendants because "there was no credible evidence . . . to indicate that the defendants had any reason to know that the dog had dangerous propensities prior to this incident. Consequently, the arbitrator [found] that the defendants could not have reasonably known of any dangerous condition at the premises and, therefore, they had no duty to warn anyone about the dangerous condition." The plaintiff objected to the arbitrator's decision and requested a trial de novo on May 4, 2000, in compliance with Practice Book § 23-66 (a).

On August 1, 2000, the plaintiff filed her objection to the defendants' motion for summary judgment.[6] The defendants filed their reply on September 5, 2000. The court concluded that, as a matter of law, the defendants did not owe the plaintiff a duty and rendered summary judgment in favor of the defendants on May 31, 2001. The plaintiff filed a motion to reargue on June 18, 2001. The court denied the motion on August 13, 2001, and the plaintiff appealed.

the attack on the plaintiff; (9) the defendants had never seen the subject dog at any time prior to the attack; (10) the defendants never cared for, walked, groomed, paid for or gave refuge or shelter to the subject dog; (11) the defendants never controlled the dog; (12) the defendants were not present during the attack; (13) prior to the attack, the defendants had no knowledge of the subject dog's vicious propensities; and (12) prior to December 21, 1996, the defendants never knew the dog existed.

[6] In her affidavit in support of her opposition to the motion for summary judgment, the plaintiff states: (1) at some time prior to the attack, she saw the defendants at the leased premises; and (2) during that particular time, a pit bull was barking, and she presumed that the defendants heard the barking, which put them on notice of the existence of a dog somewhere within the leased premises.

"Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review." (Emphasis added; internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002). A material fact is "a fact which will make a difference in the result of the case." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 379, 260 A.2d 596 (1969).

"Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue. . . . It is not enough that one opposing a motion for summary judgment claims that there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit." (Citation omitted; internal quotation marks omitted.) Id., 377. Pursuant to Practice Book § 17-46, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ."

"Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." *Dean* v. *Hershowitz*, 119 Conn. 398, 407–408, 177 A. 262 (1935). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Bonan* v. *Goldring Home Inspections, Inc.*, 68 Conn. App. 862, 871, 794 A.2d 997 (2002). Therefore, to answer the question pre-

sented, we first must determine whether the landlord was under a duty to prevent the alleged harm.

"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) *Fogarty* v. *Rashaw*, 193 Conn. 442, 446, 476 A.2d 582 (1984). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment [however] because the question is one of law." *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 660, 691 A.2d 1107 (1997). "Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." *Shore* v. *Stonington*, 187 Conn. 147, 151–52, 444 A.2d 1379 (1982).

The plaintiff claims that the court improperly rendered summary judgment because the defendants owed her a duty of reasonable care. The plaintiff argues that we should recognize the duty of a landlord to third persons for a dog bite inflicted off of the landlord's premises when the dog is owned by a tenant. Essentially, the plaintiff requests us to extend liability for a dog bite to nonowners and nonkeepers of dogs.[7] The plaintiff seeks to base that alleged duty on the landlord's mere ownership and control over the property instead

---

[7] In support of her argument, the plaintiff states that, as a matter of law, a duty exists where the landlord knew or had reasons to know of the dog's vicious propensities and failed to take reasonable steps to abate the danger by removing the dog from the premises. On the basis of that alleged duty, the plaintiff states that issues of material fact exist concerning (1) the defendants' knowledge of the Ruffs' harboring of a dog in their apartment, (2) prior incidents of attacks in which the Ruffs' dog fought with dogs that were owned and living with the second floor tenants, (3) the defendants' knowledge as to the second floor tenants harboring dogs, (4) that the defendants consented to and waived the provision in the lease prohibiting pets and (5) that the defendants were aware of the second floor tenants harboring dogs in their apartment prior to the Ruffs' occupation of the first floor apartment.

of over the dangerous instrumentality, in this case the dog, or the activity. We are not persuaded.

We note that in the plaintiff's statement of claims and in her supporting arguments, she merges the common law concerning the standard of care owed to others by an animal's keeper with the rules that govern a property owner's duty to keep his premises reasonably safe and to abate nuisances.[8] By contrast, the defendants contend that the law to be applied to this case is the law of injury by animal and not the law of premises liability. They argue that they cannot be held liable for the injury inflicted by their tenants' dog because under the law of torts pertaining to injury by animals, only the owner or keeper of the animal can be held liable. Even if the law of premises liability were applicable, they argue, they would not be liable because none of the exceptions to the rule exempting landlords from liability for injuries occurring on or off of the leased property applies. With that in mind, we will address issues of premises liability and liability for injuries caused by animals separately.

## I

The plaintiff first claims that under general principles of premises liability, the defendants had a duty to protect her as she traveled along a public sidewalk. Specifically, she argues that (1) the defendants had a duty reasonably to maintain the property over which they maintained control and (2) under 2 Restatement (Second), Torts § 379A (1965), the defendants had a duty to remove a nuisance from their property. Depending

---

[8] In her brief, the plaintiff stated the issue on appeal in relevant part as follows: "The trial court erred in granting summary judgment to the defendants by holding that a landlord does not owe a duty of reasonable care to a third person who is attacked on a public sidewalk by a tenant's dangerous dog after the dog escaped from the premises, where the landlord knew of the dog's vicious propensities and failed to take reasonable steps to abate the danger despite having the ability to remove the dog from the premises."

on where the injury occurs, off or on the premises, the duty of the landowner, based on premises liability, will vary. We will consider each in turn.

## A

The plaintiff argues that because the defendants were landlords, they had a duty to maintain, in a reasonably safe manner, the property that they controlled, in addition to a duty to maintain nearby public property.

The general rule is that a landlord has a duty reasonably to maintain property over which he exercises control. See W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 57. That duty serves to protect entrants (invitees, licensees, trespassers) and tenants.[9] The degree of care owed to an entrant depends on the entrant's status. See id., §§ 58 through 61, pp. 393–426. The duty does not, however, extend to uncontrolled land such as neighboring property or public lands.

With respect to a landlord's duty to entrants, our Supreme Court has stated that "under the common law, landlords have a duty to use reasonable care to maintain in a reasonably safe condition those areas of their premises over which they exercise control." *Gore* v. *People's Savings Bank*, 235 Conn. 360, 373, 665 A.2d 1341 (1995). "[A]s a matter of common law, although landlords owe a duty of reasonable care as to those parts of the property over which they have retained control, landlords generally [do] not have a duty to keep in repair any portion of the premises leased to and in the exclusive possession and control of the tenant. . . . In other words, [t]he generally accepted rule imposing liability on a landlord is that it is the duty of a landlord to use reasonable care to keep in reasonably safe condition the parts of the building over which he reserves control."

[9] Because the plaintiff obviously was not a tenant, we will limit our analysis to the duties owed to entrants.

(Citation omitted; internal quotation marks omitted.) *LaFlamme* v. *Dallessio*, 65 Conn. App. 1, 14, 781 A.2d 482 (2001), rev'd on other grounds, 261 Conn. 247, 802 A.2d 63 (2002).

"There could be no breach of the duty resting upon the [landlords] unless they knew of the defective condition or were chargeable with notice of it because, had they exercised a reasonable inspection of their premises, they would have discovered it. . . . Thus, liability of a landlord for damages resulting from a defective condition in an area over which the landlord exercises control generally depends upon proof that the landlord received either actual or constructive notice of the condition prior to the time of the plaintiff's injuries. . . . Liability also usually depends upon proof that the landlord failed to remedy the defective situation in a reasonable period of time after receipt of notice." (Citations omitted; internal quotation marks omitted.) *Gore* v. *People's Savings Bank*, supra, 235 Conn. 373.

"Retention of control is essentially a matter of intention to be determined in the light of all the significant circumstances. . . . The word 'control' has no legal or technical meaning distinct from that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee. . . . Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue." (Citation omitted; internal quotation marks omitted.) *LaFlamme* v. *Dallessio*, supra, 65 Conn. App. 14–15.

The plaintiff admits that the attack occurred away from the leased property. Likewise, the plaintiff fails

to provide evidence that the attack occurred within any common area under the defendants' control. The plaintiff admits that the attack occurred away from the leased property, on a public sidewalk. Additionally, the plaintiff fails to provide evidence that the attack occurred within any common area under the defendants' control. Therefore, under the theory of premises liability—that a landlord has a duty to maintain property he controls in a reasonably safe manner—the defendants owed no duty to the plaintiff.

## B

Next, the plaintiff argues that the defendant had a duty to maintain the public sidewalk in a safe condition and to prevent nuisances from occurring thereon.

The general duty to maintain property in a reasonably safe condition does not extend to uncontrolled land such as neighboring property or public lands. A landowner does, however, have a duty to protect persons off of the leased property from dangerous activities and conditions on the land. The landowner "has a privilege to make use of the land for his own benefit, and according to his own desires, which is an integral part of our whole system of private property; but it has been said many times that this privilege is qualified by a due regard for the interests of others who may be affected by it. The possessor's right is therefore bounded by principles of reasonableness, so as to cause no unreasonable risks of harm to others in the vicinity." W. Prosser & W. Keeton, supra, § 57, p. 386. "[T]he traditional common law rule has been that [the lessor] is under no obligation to anyone to look after the premises or to keep them in repair, and is not responsible, either to persons injured on or off the land for conditions which develop or are created by the tenant after possession has been transferred." Id., § 63, p. 434. The lessor also is not responsible for the tenant's activities on the

land, after transfer, that result in a private or public nuisance. See id. Relying on those principles, the plaintiff argues that pursuant to 2 Restatement (Second), supra, § 379A, the defendants owed her a duty.

Section 379A concerns activities after a lessor transfers possession of land. It states that "[a] lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if, (a) the lessor *at the time of the lease* consented to such activity or knew that it would be carried on, and (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken." (Emphasis added.) Id. Comment (a) to that section indicates that the section is closely related to 4 Restatement (Second), Torts § 837 (1979), "as to the liability of the lessor for a nuisance on the land, and should be read together with that [s]ection." Additionally, comment (b) to § 379A states that to be liable under § 379A, the lessor must consent to the activity and know of the lessee's intention to carry on the activity.

Section 837 concerns activities in the context of nuisances that occur after transfer of the land. It states: "(1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and (a) *at the time of the lease* the lessor consents to the activity or knows or has reason to know that it will be carried on, and (b) he then knows or should know that it will necessarily involve or is already causing the nuisance. (2) A vendor of land is not liable for a nuisance caused solely by an activity carried on upon the land after he has transferred it." (Emphasis added.) 4 Restatement (Second), supra,

§ 837. Those rules apply to liability for either a private or public nuisance.[10]

A common element of §§ 379A and 837 is the requirement that liability hinges on the landowner's knowledge, at the inception of the lease, regarding the existence of a dangerous activity. The plaintiff fails to recognize that requirement.

Instead, the plaintiff relies on *Perkins* v. *Weibel,* 132 Conn. 50, 42 A.2d 360 (1945), to support her position that § 379A imposes a duty on the defendants.[11] *Perkins* is, however, inapposite. In that case, the court fastened liability on the lessor because the property was leased to the tenant with the nuisance already thereon. Id., 52. In this case, the dangerous activity involved the harboring on the leased property of a dog with vicious propensities. There is uncontradicted evidence that the defendants did not know about the Ruffs' intention to engage in the dangerous activity at the inception of the lease.

---

[10] A nuisance can be either private or public. See *Pestey* v. *Cushman,* 259 Conn. 345, 356–57, 788 A.2d 496 (2002). In her brief, the plaintiff fails to state adequately the type of nuisance the defendants allegedly created or permitted to exist. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.,* 71 Conn. App. 715, 731–32, 805 A.2d 76 (2002). We therefore deem abandoned that aspect of the plaintiff's claim regarding an alleged nuisance and analyze her claim only as it relates to § 379A.

[11] The plaintiff also relies on the principle that "[w]hile liability to persons in the premises depends in the main upon control or possession, situations may arise where the landlord may be liable to persons off the premises for the leasing of premises upon which a nuisance has been constructed or maintained . . . ." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 60, pp. 154, 156. Again, the plaintiff has failed to brief the claim of an alleged nuisance adequately and, therefore, we do not analyze that portion of her argument.

In their affidavits in support of their motion for summary judgment, the defendants state that when the lease began, Tawana Ruff did not own a dog and that at no time did the Ruffs seek permission from the defendants to maintain a dog in the apartment. Consequently, the defendants owed no duty to the plaintiff under the principle in § 379A obligating a landlord to maintain a public sidewalk in a safe condition and to prevent nuisances from occurring thereon where the landlord, at the inception of the lease, knew of the lessee's dangerous activity and had reason to know that the activity would involve an unreasonable risk.

## II

The plaintiff next claims that summary judgment should not have been rendered because, as a matter of public policy, the common-law duty of a keeper or owner of a dog should be extended to those who are not owners or keepers. In support of her position, the plaintiff argues that case law in other jurisdictions, in addition to Connecticut Superior Court cases, requires the landlord to take reasonable steps to prevent a dog from escaping from the premises.

To consider the plaintiff's specific arguments, we must first discuss the status of the common law and our strict liability statute, General Statutes § 22-357, with respect to dog bites. At common law, only an owner or keeper of a domestic animal owed a duty of reasonable care to others. See W. Prosser & W. Keeton, supra, § 76, p. 542. Simply stated, to be liable, one must have control of the animal. Under the common law of this state, it has been held that liability for injuries committed by a vicious animal is grounded in negligence. See *Ford* v. *Squatrito*, 86 Conn. 710, 86 A. 579 (1913). It is the duty of the owner of such an animal, having knowledge of its vicious propensities, to give notice of the propensities or to restrain the animal, and

that failure to do so is negligence that makes the owner liable for its consequences.

Our dog bite statute, § 22-357,[12] which has been a law in Connecticut since 1798, flows directly from Connecticut common law. See *Granniss* v. *Weber*, 107 Conn. 622, 624–25, 141 A. 877 (1928). The "principal purpose and effect [of the statute] was to *abrogate the common-law doctrine of scienter*[13] as applied to damage by dogs to persons and property, so that liability of the owner or keeper became no longer dependent upon his knowledge of the dog's ferocity or mischievous propensity; literally construed, the statute would impose an obligation on him to pay for any and all damage the dog may do of its own volition. It 'extends the liability of the owner of a dog beyond that existing at common law' . . . ." (Emphasis added.) Id., 625; see also *Murphy* v. *Buonato*, 42 Conn. App. 239, 248, 679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997); D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 126.

The legislative purpose of our dog bite statute was summarized by this court in *Murphy* v. *Buonato*, supra, 42 Conn. App. 239, in which we stated that § 22-357 was enacted to create "strict liability in the owner or keeper to third parties for injuries caused by a dog. . . . It is an example of the common law principle that, as between two innocent persons, namely the injured third party and the owner or keeper, the loss should

---

[12] General Statutes § 22-357 provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. . . ."

[13] An essential element of a common-law action to recover for injuries inflicted by a dog is scienter. See *Verrilli* v. *Damilowski*, 140 Conn. 358, 360, 100 A.2d 462 (1953).

fall on the one who caused it, rather than on the one who had no part in doing so." (Internal quotation marks omitted.) Id., 248–49.

Consistent in the common-law duty and in § 22-357 is the requirement that liability be based on control (owners-keepers). The term "keeper" is defined in the General Statutes as "any person, other than the owner, harboring or having in his possession any dog . . . ."[14] General Statutes § 22-327 (6). Under § 22-357 (6), therefore, a keeper can be either a harborer or possessor of the dog. In *Buturla* v. *St. Onge*, 9 Conn. App. 495, 519 A.2d 1235, cert. denied, 203 Conn. 803, 522 A.2d 293 (1987), we stated that the term "harborer" means "one who treats a dog as living in his home and undertakes to control the dog's actions." Id., 497, citing *McCarthy* v. *Daunis*, 117 Conn. 307, 309, 167 A. 918 (1933). In *Falby* v. *Zarembski*, 221 Conn. 14, 19, 602 A.2d 1 (1992), our Supreme Court further explained that the term "harborer" includes one who provides lodging, shelter or refuge in addition to possession with control. A landlord, however, is not a "keeper" of a dog merely because a tenant owns a dog and keeps the dog on the premises. See *Buturla* v. *St. Onge*, supra, 498.[15]

---

[14] Although the plaintiff has not made a claim under General Statutes § 22-357 and fails to claim that the defendants owned the dog, for the defendants to be liable, the plaintiff must provide evidence showing that the defendants were the dog's keepers, as that term has been defined for purposes of the statute. See *Braddy* v. *Catalano*, judicial district of Waterbury, Docket No. 139523 (September 29, 1998) (22 Conn. L. Rptr. 608). We note, however, that the plaintiff does not allege that the defendants are the dogs owners or keepers. See footnote 16.

[15] We are aware that some trial courts appear to abrogate the requirement of keeper status in common-law negligence claims. See *Danahy* v. *Johnson*, Superior Court, judicial district of Hartford, Docket No. 579914 (April 12, 1999) (24 Conn. L. Rptr. 400). We disagree with the reasoning of those courts.

In *Schonwald* v. *Tapp*, 142 Conn. 719, 722, 118 A.2d 302 (1955), our Supreme Court stated that "[t]he statute creates a cause of action that did not exist at common law." As previously discussed, the statute only abrogated the scienter requirement. It did not abrogate the owner-keeper requirement.

With those principles in mind, we now turn to consider, as a matter of first impression, the plaintiff's claim that we should *extend* the common-law duty to nonowners and nonkeepers.[16]

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Citations omitted; internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002).

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are

---

[16] It is important to note that the plaintiff does not claim that the defendants were owners or keepers. Despite the plaintiff's arguments, we recognize that a landlord can be an owner or keeper of a tenant's dog if the landlord exercises control that is equivalent to the control exercised by an owner or keeper. In *D'Ambrose* v. *Johnson*, judicial district of New Haven at Meriden, Docket No. 252483 (October 24, 1996), the specific issue of whether a landlord could be considered an owner or keeper, on the basis of his control over the land, was considered. In that case, a dog was owned by Johnson, Jr., the son of the landlord, Johnson, Sr. Johnson, Sr., permitted his son to bring the dog to his home. The plaintiff offered evidence that Johnson, Sr., permitted the dog to stay at his home and that he fed the dog. The court held that those acts did not make Johnson, Sr., a keeper because, relying on the reasoning in *Falby* v. *Zarembski*, supra, 221 Conn. 14, and *Buturla* v. *St. Onge*, supra, 9 Conn. App. 495, a landlord who consents to the presence of the dog on property, but exercises no control over the dog, is not a keeper. The *D'Ambrose* court refused to find that Johnson, Sr., controlled the dog because the tenant and owner of the dog, Johnson, Jr., was present whenever Johnson, Sr., fed or permitted the dog to stay at his home.

quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) Id., 756.

A

Foreseeability

As a general matter, it may be foreseeable that the activities of a tenant may cause harm to another person. In defining the limits of the duty, however, "we have recognized that [w]hat is relevant . . . is the . . . attenuation between [the defendant's] conduct, on the one hand, and the consequences to and the identity of the plaintiff, on the other hand." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 574, 717 A.2d 215 (1998).

In the present case, the plaintiff alleges that "[i]t is well within the general knowledge of a reasonable person that dogs need to go outside regularly and that this creates a risk that the dog may escape. If a dog does escape, it is foreseeable that it will be a danger to third persons. In an urban area, like Bridgeport, the risk is magnified because of the proximity to public places, like sidewalks, where it can be anticipated that a large number of people will be located."

That argument presumes that the defendants knew that the Ruffs owned a dog. Although facts may be in dispute as to the landlords' knowledge at the time of the incident, accepting the plaintiff's allegations as true and construing them in the light most favorable to the plaintiff as the nonmovant, the ordinary landlord, knowing what the defendants in this case knew or should have known, would have anticipated that the plaintiff might have suffered the harm if the tenant was negligent and permitted the dog to escape.[17] With such knowledge, it was foreseeable that if the dog escaped, it might attack a passerby. That is not an incident that could be characterized as being too remote. It is a well established tenet of our tort law that "[d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. See *Palsgraf* v. *Long Island Railroad Co.*, 248 N.Y. 339, 345, 162 N.E. 99 [1928] . . . ." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 575.

B

Fundamental Policy of the Law

Even though we have determined that the injury was foreseeable, that is not the end of our analysis. Viewing the evidence in the light most favorable to the plaintiff and assuming that the landlord could have foreseen her injury, we must consider relevant public policy concerns to determine the existence or nonexistence of a duty.

"In *Jaworski* [v. *Kiernan*, 241 Conn. 399, 407, 696 A.2d 332 (1997)], this court recognized four factors to be considered in determining the extent of a legal duty

---

[17] Although that raises an issue of fact, as a matter of law, foreseeability is only one prong of the duty analysis. Unless, as a matter of public policy, we conclude that a duty existed, such issues of fact will not be material to the ultimate conclusion that a duty does not exist.

as a matter of policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging continued vigorous participation in the activity, while protecting the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Perodeau* v. *Hartford*, supra, 259 Conn. 756–57.

We first consider the normal expectations of third persons with respect to their safety and protection from tenants' dogs residing in apartment buildings. We also must consider the normal expectations of landlords concerning liability for the acts of their tenants' pets. The normal expectations of third persons walking in any public area, regardless of the proximity of an apartment complex, is that dogs may be nearby, and dog owners and keepers will maintain control over those animals. That expectation includes control over the dog while in the home, on private land or on public property. It is not unthinkable, however, that at some time, a dog might escape from the control of its keeper or owner and attack a person who is walking in public. Likewise, although a landlord does not generally expect to become the guardian or keeper of his tenants' pets, it is not unthinkable that at some point, regardless of any lease provision, a tenant may harbor a dog on the leased premises that ultimately escapes and attacks entrants or third persons walking in public.

The second prong of our public policy analysis requires us to consider the benefits, if any, of encouraging tenants to keep dogs in their apartments. It is not unlawful to maintain a dog in one's home. Dogs are used for companionship and to protect property and person. We recognize that there may be tenants whose interests in keeping a guard dog for protection of person or property are based on the character of the neighborhood in which the leased premises are located or by virtue of the peculiar circumstances of the individual

tenant. Those are legitimate reasons for keeping dogs. Consequently, the "interest in the free use of the property . . . must be thrown into the scales in determining both the duty to exercise any care at all, and the reasonableness of the defendant's conduct." W. Prosser & W. Keeton, Torts, supra, § 57, p. 387.

Another public policy concern that influences our decision is our desire to prevent the possible flood of litigation that might result from adopting the rule proposed by the plaintiff. If landlords were held liable for off premises injuries caused by their tenants' dogs, landlords would become the insurers of the general public without end. That should not be encouraged.

The final prong of the duty inquiry requires us to consider the decisions of other jurisdictions. Our review of the case law from other jurisdictions discloses that a landlord can be held liable under a common-law claim of negligence for attacks by a tenant's dog on a third person under a recognized common-law "keeper" duty where that landlord exercises control equivalent to that of a keeper or owner.[18] A landlord is not liable, however, for a tenant's dog simply because he is the owner of the property. See 3 Restatement (Second), Torts § 514, comment (a) (1977).

---

[18] We recognize that there is a split of authority among the Superior Courts with respect to that issue. See *Thomas* v. *Costanti*, Superior Court, judicial district of Waterbury, Docket No. 160056 (November 14, 2000). The two trial court decisions illustrating that distinction are *Goff* v. *Timothy*, Superior Court, judicial district of New Haven, Docket No. 241611 (March 20, 1990), and *Duhaime* v. *Tron Mills*, Superior Court, judicial district of Ansonia-Milford, Docket No. 34521 (June 30, 1992). The rule first enunciated in *Goff* adopts the reasoning of 3 Restatement (Second), Torts § 514 (1977), and comment (a) to § 514, and centers on whether the landlord was a harborer or keeper. Those cases relying on *Duhaime* do not consider whether the landlord was a harborer or keeper, and, instead, consider whether the landlord had knowledge of the dog's dangerous propensities at the inception of the lease, as described by the New York Court of Appeals in *Strunk* v. *Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984).

The plaintiff cites *Strunk* v. *Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 479 N.Y.S.2d 175 (1984), to support her claim that the common-law duty should be extended to nonowners and nonkeepers. In *Strunk*, the defendant landlord appealed from the decision of the trial court denying her motion for summary judgment. Id., 574. In that case, an action was brought against a landlord for injuries received by an infant plaintiff when the tenant's dog attacked and bit the plaintiff on the mouth and arm. Id., 574–75. In April, 1979, the prospective tenant was living in one of the landlord's houses on a six acre parcel. Id., 574. At that time, the tenant had not yet signed a lease with the landlord. Id. The landlord testified that she had observed the tenant's dog barking and " 'acting ferocious' "; id.; while tied up on the landlord's property. One month later, in May, 1979, the landlord leased the residence to the tenant. Id. Later that month, the tenant offered to give his dog to the victim. Id. The victim and his mother followed the tenant to the tenant's house to see the dog. Id. While the tenant and the victim went to untie the dog, the dog attacked the victim. Id., 574–75. The attack occurred on the leased property. Id.

The New York Court of Appeals affirmed the denial of the motion for summary judgment, but limited its decision to the peculiar circumstances of the case, stating that issues of material fact existed as to the landlord's knowledge of the presence of the dog and of its vicious propensities. Id., 578. The court stated that the "liability, if any, of the landlord would be predicated on a jury finding that, at the time of the initial leasing of the premises to the tenant, the landlord knew both of the prospective presence of the dog and its vicious propensities." Id. Thus, under *Strunk*, to hold the landlord liable, the jury would be required to find that at the time of the initial leasing, the landlord had actual knowledge of (1) the presence of the dog and (2) the dog's vicious propensities. See id.

The dissenting opinion in *Strunk* notes that because the dog was tied up when the landlord first became aware of it and at the time of the attack, "[t]he landlord's liability . . . must rest not on a negligent failure to see that the dog was confined or controlled but on *strict liability* deriving from the simple fact that the landlord knew at the time of leasing that the tenant kept a dog with 'vicious propensities.'" (Emphasis added.) Id., 578–79 (Kaye, J., dissenting); see also *Frobig* v. *Gordon*, 124 Wash. 2d 732, 738, 881 P.2d 226 (1994). Because we do not want to adopt a policy of strict liability, we reject the issue of timing as enunciated in *Strunk*.

The *Strunk* court also adopted the reasoning of the California Court of Appeal in *Uccello* v. *Laudenslayer*, 44 Cal. App. 3d 504, 118 Cal. Rptr. 741 (1975), for the idea that landlords can be held liable for off premises attacks under the general common-law rule and where the landlord has the right to remove the animal by evicting the tenant. *Strunk* v. *Zoltanski*, supra, 62 N.Y.2d 576; see also *Cronin* v. *Chrosniak*, 145 App. Div. 2d 905, 906–907, 536 N.Y.S.2d 287 (1988). Those cases attempt to impose an additional duty to remove or to evict tenants harboring dangerous dogs. We do not adopt such a rule. As the court in *Wright* v. *Schum*, 105 Nev. 611, 613, 781 P.2d 1142 (1989), stated, holding landlords liable for actions of their tenants' vicious dogs by requiring them to evict tenants with dangerous dogs would result merely in the tenants' moving to another location with their still dangerous dogs. That is nothing more than a "Typhoid Mary" approach to the case.[19]

*Strunk* illustrates that some jurisdictions recognize a distinction between a landlord's duty where a tenant acquires a dog before the inception of the lease and

---

[19] The court in *Wright* v. *Schum*, supra, 105 Nev. 613, stated that Typhoid Mary "was outcast from one place only to continue her deadly disease-spreading activity at another place."

the landlord's duty where the tenant acquires a dog after the inception of the lease. According to those courts, when the landlord knows of the potential danger before the lease is entered into, the landlord has the ability to control and to alleviate potential danger. See also W. Prosser & W. Keeton, supra, § 63, p. 437 (discussing courts that liken landlord's activities to creating nuisance by permitting tenant to engage in conduct landlord should have known would necessarily invoke such result). Other courts disagree and note that such a distinction creates a rule of strict liability, based solely on the landlord's knowledge, where a tenant owns a dog with vicious propensities at the inception of the lease. See *Frobig* v. *Gordon*, supra, 124 Wash. 2d 737–38.

In *Frobig*, the plaintiff, an invitee, was injured by a tenant's tiger. Id., 734. The injury occurred while filming a commercial on leased property. Id. The plaintiff brought an action against the tenant and the landlord. Id. The Supreme Court of Washington did not recognize a distinction between a dog attack and a tiger attack, as the duty of the lessor is the same under the common law because, in the court's opinion, vicious dogs and wild animals are equally dangerous. Id., 736–37. The court stated that an "owner, keeper, or harborer of a dangerous or vicious animal is liable; the landlord of the owner, keeper, or harborer is not." Id., 735. Relying on the dissent in *Strunk*, the *Frobig* court explicitly disagreed with the *Strunk* court's reasoning that because the landlord knew that the tenant would have a dangerous animal on the premises *before* the property was rented, the landlord had a heightened duty. Id. In other words, the *Strunk* rule could be read to omit the "keeper" requirement of the common-law rule.

Although we do not agree with such a drastic result, it is undisputed in this case that the tenant obtained the dog after the inception of the lease. Therefore, we

do not need to determine the correctness of the *Strunk* distinction with respect to the timing of notice.

Despite the *Strunk* court's apparent dissolution of the owner-keeper requirement of the common law, a number of other jurisdictions maintain the common-law duty requirement for a "keeper." See *Tran* v. *Bancroft*, 648 So. 2d 314, 316 (Fla. App. 1995) (landlord, nonowner of dog not liable to plaintiff for injuries caused by tenant's dog off premises); *Colombel* v. *Milan*, 24 Kan. App. 2d 728, 732, 952 P.2d 941 (1998) (landlords could not be held liable for injury caused by dog because they were not possessors, harborers, owners or keepers of dog); *Szkodzinski* v. *Griffin*, 171 Mich. App. 711, 713–14, 431 N.W.2d 51 (1988) (holding there is no basis for imposing liability on nonowner, nonkeeper or nonharborer for bite inflicted by tenant's dog); *Richards* v. *Leppard*, 118 N.H. 666, 666–67, 392 A.2d 588 (1978) (homeowner found not to be possessor of dog, no duty arose relative to bite); *Shen* v. *Kornienko*, 253 App. Div. 2d 396, 396, 676 N.Y.S.2d 593 (1998) (mere ownership of property and not dog does not fasten liability for off premises dog bites); *Shafer* v. *Beyers*, 26 Wash. App. 442, 447, 613 P.2d 554 (landlords not liable for off premises attack by tenant's dog because landlords not owners, keepers or harborers of dog), review denied, 94 Wash. 2d 1018 (1980).

Having considered the cases from other jurisdictions, as a matter of policy, we are not persuaded that the common-law duty should be extended to landlords who are not owners or keepers.

## C

### The Plaintiff's Arguments

Finally, we turn to the plaintiff's specific arguments. She argues that (1) the cases of other jurisdictions, *Strunk* v. *Zoltanski*, supra, 62 N.Y.2d 572, and *Matthews*

v. *Amberwood Associates Ltd. Partnership, Inc.*, 351 Md. 544, 719 A.2d 119 (1998), require the landlord to take reasonable steps to prevent the dog from escaping the premises, and (2) the recent trial court cases, *Portnoy* v. *King*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 087873 (November 6, 1990), and *Danahy* v. *Johnson*, Superior Court, judicial district of Hartford, Docket No. 579914 (April 12, 1999) (24 Conn. L. Rptr. 400), support that position. Again, we are unpersuaded.

Turning first to *Strunk* and *Matthews*, those cases are inapplicable as relied on by the plaintiff because in both of those cases, the attack occurred in common areas of leased property. Moreover, as discussed in part II B, we disagree with *Strunk* that mere knowledge at the inception of the lease is enough to establish liability.

We also are not persuaded by the plaintiff's reliance on the Superior Court cases, *Portnoy* and *Danahy*. In *Portnoy*, the court granted the defendant's motion for summary judgment as to that count of the complaint alleging common-law liability for a dog bite to which the defendant claimed governmental immunity as a defense.[20] The issue in that case focused on whether a decision that a dog is dangerous and should be destroyed is characterized properly as a discretionary decision and, thus, protected by governmental immunity.

Relying on *Danahy*, the plaintiff notes that the trial court in that case stated that a nonowner of a dog may be liable under the common law regardless of whether

[20] The plaintiff cites *Portnoy* v. *King*, supra, Superior Court, Docket No. 087873, for the proposition that summary judgment was denied "where the landlord admitted knowledge of the existence of the tenant's dog and its vicious propensities, and where the attack occurred in a common area of the premises." On page five of her brief, the plaintiff indicates that the *Danahy* court relied on *Portnoy* for that proposition. After reviewing *Danahy*, it is apparent that the plaintiff relied on the *Danahy* court's inaccurate citation. The plaintiff's reliance on *Portnoy*, therefore, is inappropriate.

he or she is a harborer. In light of our analysis in part II and our holding in *Buturla* v. *St. Onge,* supra, 9 Conn. App. 495, we disagree.

The plaintiff, again relying on *Danahy,* also argues that the defendants are liable because 2 Restatement (Second), supra, § 379A, requires mere possession of the land coupled with knowledge that at the inception of the lease, the landlord knew that the tenant owned a vicious dog. The plaintiff argues that the landlord is not required to be either an owner or a keeper of the dog if the landlord knew about the dog at the inception of the lease. We need not reach that precise issue because the plaintiff does not challenge, or allege, that the Ruffs owned the dog at the inception of the lease.[21] Accordingly, *Danahy* is factually distinguishable because the plaintiff fails to allege that the landlord knew of the dog's presence at the inception of the lease in January, 1996.[22]

---

[21] We decline to decide today whether to adopt the heightened duty, which is based on when the landlord first learned of the dog's vicious propensities, as enunciated by *Strunk* v. *Zoltanski,* supra, 62 N.Y.2d 576. In *Strunk,* the court held that because the landlord knew of the vicious propensities of the dog prior to the tenant entering into the lease, the landlord, by entering into the lease with such knowledge, created a foreseeable risk that operated to harm the plaintiff. Id., 577.

[22] In her affidavit of July 24, 2000, the plaintiff attempts to illustrate the defendants' knowledge of the dog through a tenuous incident. The plaintiff claims that on an undisclosed date, the defendants came to the leased property to inspect an unidentified area on the leased premises. At that time, the plaintiff alleges that an unidentified dog was barking. From that, the plaintiff claims that the defendants must have heard the barking and, therefore, knew that the dog belonged to the Ruffs. As a result, the plaintiff claims, the defendants were placed on notice. At best, that would indicate that the defendants were aware that a dog, on that particular date, was barking in or near the leased premises. It does not, however, prove that the defendants had notice of (1) the dog in question or its vicious propensities, (2) the dog's presence at the inception of the lease or (3) who owned the dog.

Christopher Lyddy, in his affidavit of October 21, 1999, stated that "[w]hen the lease began, Tawana Ruff did not own a dog" and that "[p]rior to December 21, 1996, [he] had no knowledge that a pit bull dog was being kept by the Ruffs in the first floor apartment." He also states in his affidavit that he was not aware of the dog's vicious propensities prior to December 21, 1996.

Therefore, in light of the case law of other jurisdictions, our limited case law on the matter and as a matter of public policy, we do not find it appropriate to extend the duty to nonowners or nonkeepers.

Viewing the facts as presented by the plaintiff in the light most favorable to her, no issues of material fact are raised. The facts as presented do not indicate that the defendants were owners, keepers or harborers of the dog under a recognized "keeper" duty. In their affidavits, the defendants state that they did not own, keep or harbor the dog. By contrast, the plaintiff's affidavit does not discuss who controlled the dog. Instead, it indicates only that the defendants had knowledge of the dog because at some time in the past, the defendants visited the property while the dog was barking. Regardless of whether the landlords had notice at any particular time, there is no offer of proof to indicate that they were owners, keepers or harborers of the dog. We do not, therefore, make a factual determination, but instead conclude, as a matter of law, that the facts as presented, even if they were in dispute, were not material to the issue of whether a duty existed. Summary judgment, therefore, was properly rendered.

The judgment is affirmed.

In this opinion the other judges concurred.