DA 14-0515

FILED

April 28 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0515

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 111

TRAVIS KNAPTON, on behalf of
E.K., a minor,

      Plaintiff and Appellant,

    v.

DANIEL W. MONK, CHERYL MONK
and KIMBERLEE JOHNSON,

      Defendants and Appellees.

APPEAL FROM:     District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DV 12-129
Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Kevin S. Brown, Paoli & Brown, P.C.; Livingston, Montana

            Jeremy S. Yellin, Attorney at Law; Havre, Montana

      For Appellee:

            Paul R. Haffeman; James A. Donahue, Davis, Hatley, Haffeman & Tighe;
Great Falls, Montana

Submitted on Briefs:  March 25, 2015
Decided:  April 28, 2015

Filed:

                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Travis Knapton, father of E.K., a minor child, appeals from the order of the Twelfth Judicial District Court, Hill County, granting summary judgment in favor of Kimberlee Johnson on Knapton's claims of negligence and strict liability. We affirm.

¶2 We address the following issues on appeal:

¶3 *1. Did the District Court err by granting summary judgment in favor of Johnson on the negligence claim?*

¶4 *2. Did the District Court err by granting summary judgment in favor of Johnson on the strict liability claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Kimberlee Johnson is the owner of a house located in Havre. Travis Knapton and Misty Knapton live in an adjacent home with their minor children. Johnson moved into her house in October of 2008 and lived there with her husband and their two dogs. The couple's dogs were housed in a 10' x 10' kennel. There was no fence separating Johnson's property from the adjoining Knapton property. It is undisputed that Johnson's dogs did not run at large, and they are not the subject of this appeal.

¶6 In October 2010, Johnson leased the downstairs portion of the residence to Daniel and Cheryl Monk, while continuing to live upstairs. At the time of the lease, Johnson knew the Monks owned several dogs of pit bull ancestry and that the animals would be living with the family. After the Monks moved into the residence, Johnson relocated her dogs to a property owned by her husband outside of the city limits, and the Monks used the kennel for their dogs.

2

¶7 In March 2011, Johnson moved out of the house and the Monks began leasing the entire residence. Johnson, however, continued to have a presence at the house. She left personal belongings in a downstairs storage room, received mail at the residence, inspected the premises two or three times a month, and occasionally stayed overnight on a foldaway bed.

¶8 The Monks' dogs began escaping from the kennel. On July 23, 2011, one of the Monks' dogs, Shy, bit M.K., E.K.'s older sister, on Knapton's property. On August 4, 2011, Daniel Monk was charged with four misdemeanor offenses stemming from this incident. On October 13, 2011, Shy again escaped and bit E.K. on the leg in Knapton's backyard. As a result of charges arising from these two incidents, Daniel Monk pled nolo contendere to six separate criminal charges on February 16, 2012.

¶9 On July 19, 2012, Travis Knapton brought this action against the Monks and Johnson on behalf of E.K. The Monks failed to answer and a default was entered against them. Johnson moved for summary judgment, and the District Court conducted a hearing on Johnson's motion.[1] Knapton stipulated that there was no evidence in the record that demonstrated Johnson was aware the Monks' dogs had previously bitten any other person prior to the attack on E.K. The District Court granted Johnson's motion for summary judgment, concluding that Knapton's negligence claim failed because Johnson did not know the Monks' dogs were vicious. The court also concluded that Knapton's strict liability claim failed because Shy "was not a purebred pit bull, but a mixed breed" and

---

[1] The transcript of the hearing was lost and is unavailable on appeal. Neither party alleges they were prejudiced by the loss of the transcript.

Knapton had not provided authority demonstrating that mixed breed dogs with pit bull ancestry are inherently dangerous. Knapton appeals.

## STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment de novo and apply the same criteria under M. R. Civ. P. 56(c) as the district court. *Olsen v. Johnston*, 2013 MT 25, ¶ 9, 368 Mont. 347, 301 P.3d 791. Summary judgment is appropriate only "when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." *Parish v. Morris*, 2012 MT 116, ¶ 10, 365 Mont. 171, 278 P.3d 1015. "The party moving for summary judgment bears the initial burden of establishing that no genuine issue of material fact exists." *Tonner v. Cirian*, 2012 MT 314, ¶ 8, 367 Mont. 487, 291 P.3d 1182 (citation and internal quotations omitted). Once the moving party has met that burden, the "burden then shifts to the non-moving party to present substantial evidence that raises a genuine issue of material fact." *Olsen*, ¶ 9. Whether the moving party is entitled to judgment as a matter of law is a legal conclusion, which we review for correctness. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 13, 344 Mont. 540, 189 P.3d 615.

## DISCUSSION

¶11 *1. Did the District Court err by granting summary judgment in favor of Johnson on the negligence claim?*

¶12 Knapton argues that Johnson is liable in negligence for the injuries inflicted by the Monks' dog on his daughter, E.K., under a theory of premises liability. Knapton reasons that Johnson, as the lessor of the premises, owed a duty of care to E.K. In order to

4

maintain a negligence cause of action, a plaintiff must prove four essential elements: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty, (3) a causal connection between the defendant's breach of care and the plaintiff's injury, and (4) damages resulting from the injury. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 13, 342 Mont. 335, 181 P.3d 601. Ordinarily, negligence actions involve fact intensive questions and are not susceptible to summary judgment. *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. #37*, 2004 MT 175, ¶ 23, 322 Mont. 80, 93 P.3d 1239. However, whether a defendant owes a legal duty to another is a question of law. *Fisher*, ¶ 17.

¶13    As a general rule, a lessor is under no duty "to anyone to look after the premises or to keep them in repair, and is not responsible, either to persons injured on or off the land for conditions which develop or are created by the tenant after possession has been transferred." *Larson-Murphy v. Steiner*, 2000 MT 334, ¶ 103, 303 Mont. 96, 15 P.3d 1205; *see also Vennes for Vennes v. Miller*, 1998 MT 23, ¶ 12, 287 Mont. 263, 954 P.2d 736 ("[I]n general, a nonresident property owner is not liable for injuries to others inflicted by a dog owned and maintained by the occupant of the property in question."). However, we have noted an exception to this general rule, as stated in the Restatement (Second) of Torts § 379A, which we have cited as persuasive authority:

> A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession *if, but only if*:
>
> > (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the *lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk,* or that special precautions necessary to safety would not be taken.

*Larson-Murphy,* ¶ 104 (citing Restatement (Second) of Torts, § 379A (1965) (emphasis added).[2] We also noted in *Larson-Murphy* a similar rule is stated in the Restatement (Second) of Property, *Landlord and Tenant,* § 18.4 (1977).[3] *See also Easson v. Wagner,* 501 N.W.2d 348, 350 (S.D. 1993) (Although generally "a landlord is not liable for the negligent acts of his tenant . . . exceptions arise in those cases where the condition or use of the premises is so potentially harmful that the courts will not permit the owner to hide behind a lease.").[4]

---

[2] In response to our decision in *Larson-Murphy v. Steiner,* 2000 MT 334, 303 Mont. 96, 15 P.3d 1205, where we held that livestock owners had a duty to keep their animals from wandering onto highways, the Legislature enacted § 27-1-724, MCA. The statute abrogated the specific holding in *Larson-Murphy* by providing that "a person owning property has no duty to keep livestock from wandering on highways and is not subject to liability for damages to any property or for injury to a person caused by an accident involving a motor vehicle and livestock unless the owner of the livestock or property was grossly negligent or engaged in intentional misconduct." Section 27-1-724, MCA. However, the enactment of § 27-1-724, MCA, did not alter the duty of lessors generally. By its plain terms, § 27-1-724, MCA, was limited in application to property owners of "livestock" wandering on "highways."

[3] Restatement (Second) of Property, *Landlord and Tenant* § 18.4, provides:

A landlord is subject to liability for physical harm to persons outside the leased property caused by activities of the tenant or others on the leased property after the landlord transfers possession only if:

(1) the landlord at the time of the lease consented to the activity or knew that it would be carried on; and
(2) the landlord knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken.

[4] Section 27-1-715, MCA, entitled *Liability of owner of vicious dog,* is not applicable to the claim against Johnson as Monks' landlord. As the District Court noted, "[b]y its plain language, the statute limits liability to the owner of the cantankerous canine."

¶14 Knapton argues that "Johnson reasonably should have known the dogs were vicious" and that allowing the Monks to harbor vicious dogs "unavoidably involve[d]," in the words of the Restatement, an unreasonable risk. Johnson responds that she cannot be held liable for the dog's attack upon E.K. because she was the not the "keeper" of the Monks' dogs, citing *Criswell v. Brewer*, 228 Mont. 143, 741 P.2d 418 (1987), for the proposition that a lessor who is neither the owner nor the keeper of a lessee's dog cannot be held liable for common law negligence based upon the dog's conduct, regardless of whether the landlord knew about the dog's vicious propensities. Johnson essentially argues that the law of injury by animal rather than the law of premises liability controls and Knapton's failure to clearly articulate liability under the former theory is fatal to his claim.

¶15 Admittedly, in our opinions in *Criswell* and other cases, we failed to clearly explain that injury by animal and premises liability are separate common law theories of liability. We take this opportunity to clarify that the two theories are distinct, and that the absence of liability under one theory does not necessarily preclude recovery under the other. In applying the law of injury by animal, we have concluded that a plaintiff may recover in a common law negligence action only against a defendant who is the "keeper" of the domestic animal. In contrast, when analyzing premises liability where a domestic animal is involved, we have cited the rule stated in the Restatement (Second) of Torts § 379A, which does not require, as a prerequisite for recovery, that the defendant be the keeper of the domestic animal. *Compare Vennes for Vennes v. Miller*, 1998 MT 23, 287

Mont. 263, 954 P.2d 736, *with Larson-Murphy v. Steiner*, 2000 MT 334, 303 Mont. 96, 15 P.3d 1205.

¶16    Similarly, other state courts have analyzed premises liability and injury by animal as separate legal theories of liability. In *Stokes v. Lyddy,* 75 Conn. App. 252, 815 A.2d 263 (Conn. App. Ct. 2003), the Connecticut Appellate Court addressed an analogous factual scenario where the plaintiff, while walking along a public sidewalk, was bitten by a pit bull owned by the defendants' tenant. *Stokes*, 75 Conn. App. at 254, 815 A.2d at 267. The court "note[d] that in the plaintiff's statement of claims and in her supporting arguments, she merge[d] the common law concerning the standard of care owed to others by an animal's keeper with the rules that govern a property owner's duty to keep his premises reasonably safe." *Stokes*, 75 Conn. App. at 259, 815 A.2d at 269. The court proceeded to "address [the] issues of premises liability and liability for injuries caused by animals separately." *Stokes*, 75 Conn. App. at 259, 815 A.2d at 269. In discussing the law of injury by animal, the court focused on the foreseeability of the harm and the attendant public policy concerns in determining whether the common law duty extended to landlords. *Stokes*, 75 Conn. App. at 265, 815 A.2d at 273. With regard to premises liability, the court adopted § 379A of the Restatement (Second) of Torts, but ultimately held that the defendants owed no duty to the plaintiff under § 379A, on the facts of the case, because the lessors neither "knew of the lessee's dangerous activity [nor] had reason to know that the activity would involve an unreasonable risk." *Stokes*, 75 Conn. App. at 265, 815 A.2d at 273. *See also Colombel v. Milan*, 24 Kan. App. 2d 728, 952

8

P.2d 941 (Kan. Ct. App. 1998) (contrasting the law of injury-by-animal and Kansas law of premises liability in a case involving an attack by tenants' dog).

¶17    That brings us back to Johnson's citation of *Criswell*. There, we held that a ranch owner could not be held liable for injuries inflicted on the plaintiff by the ranch foreman's dog, reasoning the owner was not liable under either of the two theories. *Criswell*, 228 Mont. at 145, 741 P.2d at 419-20. The dog had bitten another person approximately two years earlier and the owner was aware of the prior incident. *Criswell*, 228 Mont. at 144, 741 P.2d at 419. While we declined to hold the owner liable in part because he was not the "keeper" of the dog, that finding was dispositive only with regard to the law of injury by animal. In regard to premises liability, the salient facts were those that demonstrated the ranch owner had taken precautions to address the risk of injury presented by the dog, including providing materials to the foreman to build a fence and dog pen behind the ranch house, requiring that the foreman keep the dog in the pen unless accompanied by the foreman, and posting visible "Beware of Dog" signs on the fence surrounding the house. *Criswell*, 228 Mont. at 144, 741 P.2d at 419. We determined that, under the facts, the ranch owner did not know or have reason to know that allowing the foreman to keep the dog would unavoidably involve an unreasonable risk. *Criswell*, 228 Mont. at 145, 741 P.2d at 420. While this hindsight reading may place a new sheen on the *Criswell* analysis, it is clear that *Criswell* did not relieve a lessor of exposure to premises liability merely because the lessor cannot be held liable under the law of injury by animal.

9

¶18    However, we conclude on the record here that insufficient evidence was presented to defeat summary judgment on the claim of premises liability.  We first note that Knapton has misstated the standard with regard to Johnson's alleged constructive knowledge.  Knapton argues that Johnson "should have known" of the dogs' vicious propensities.  However, the Restatement employs the "reason to know" standard, rather than the "should know" standard, which are distinct terms.  The commentary to § 12 of the Restatement (Second) of Torts explains:

> Both the expression "reason to know" and "should know" are used with respect to existent facts.  These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question.  "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist.  "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.

Restatement (Second) of Torts § 12 cmt. a (1965).[5]  Therefore, the dispositive issue is not whether Johnson "should have known," as part of a duty to ascertain the danger, that the Monks' dogs were vicious, but whether Johnson had "reason to know" of the dogs' propensities, i.e., whether Johnson had knowledge of facts from which she could infer that the Monks' dogs had vicious propensities.

---

[5] Section 12 of the Restatement further defines "reason to know" to "denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists."  Restatement (Second) of Torts § 12.

10

¶19    Drawing all reasonable inferences in favor of Knapton, we conclude that Knapton has failed to present sufficient evidence to meet this standard. There is no direct evidence demonstrating that Johnson knew the Monks' dogs had vicious propensities. Knapton does not allege the dogs exhibited hostile tendencies in Johnson's presence or that anyone, including the Knaptons, informed Johnson of the earlier biting incident involving M.K., prior to the incident involving E.K. Misty Knapton testified that Monks' dogs were loose about once a week, but this information was apparently never conveyed to Johnson and, in any event, the fact that the dogs were running loose does not, without more, establish they were also vicious. Knapton offers that Johnson "likely" knew of the August 4, 2011, misdemeanor charges against Daniel Monk arising from the first biting incident because Johnson and the Monks were friends, but this is mere speculation. Knapton offers that it is "rational to assume" that Johnson reasonably should have known of the "pit bulls['] existence and of their vicious nature and propensity for escaping and causing mayhem" because she frequently visited the residence. However, the only evidence in the record relating to Johnson's knowledge of the dogs' temperament is Johnson's unrefuted deposition testimony that the dogs were loving and affectionate to her and that she would have no problem letting her young children play with them. Knapton's assertions are speculative and do not constitute substantial evidence to raise a genuine issue of material fact. Therefore, we conclude that the District Court's order granting summary judgment in favor of Johnson on the negligence claim was correctly entered.

11

¶20 *2. Did the District Court err by granting summary judgment in favor of Johnson on the strict liability claim?*

¶21 Citing to the Restatement (Second) of Torts §§ 519 and 520, as applied in *Chambers v. City of Helena*, 2002 MT 142, 310 Mont. 241, 49 P.3d 587, Knapton urges this Court to adopt a new rule that would classify a tenant's harboring of purebred pit bulls as an inherently dangerous activity, and hold landlords strictly liable for injuries arising from this activity. Knapton contends that pit bulls "pose an unreasonable risk of harm to humans and particularly children" and that "[a]ny landlord who knowingly allows a pack of them to live on her property should be held strictly liable for any resultant attack upon a human." To support his argument, Knapton cites *Tracey v. Solesky*, 427 Md. 627, 50 A.3d 1075 (Md. 2012), which imposed strict liability on landlords who permit tenants to harbor purebred pit bulls, but expressly declined to extend strict liability for pit bull cross-breeds. *Tracey*, 427 Md. at 667, 50 A.3d at 1098.

¶22 As Knapton argues only that *purebred* pit bulls are inherently dangerous, he challenges the District Court's statement that, Shy, the dog that bit E.K., "was not a purebred pit bull, but a mixed breed." Knapton reasons "the record does not specifically speak to (or offer any proof of) the percentage of pit bull blood that Shy had" and "Johnson has not offered any evidence of the percentage of pit bull blood possessed by Shy or the other dogs." However, Johnson submitted discovery responses stating the Monks' dogs were "pit bull terrier mixes," and the District Court proceeded on that premise in rendering its decision. Once Johnson submitted evidence that the Monks' dogs were of a mixed breed, the summary judgment burden of proof shifted to Knapton

12

to provide evidence sufficient to raise a genuine issue of material fact that the dogs were purebred pit bulls in order to sustain his argument for imposition of a new legal duty. Knapton failed to meet this burden.

¶23 Further, even assuming for the sake of argument that the Monks' dogs were purebred bit bulls, we cannot conclude that this record demonstrates that purebred pit bulls are inherently vicious. No expert testimony or other evidence that would support that proposition has been presented and Knapton offers only conclusory statements. Thus, the evidentiary record here does not properly present the legal issue of strict liability for analysis. We conclude the District Court did not err by granting summary judgment in favor of Johnson on the issue of strict liability.

¶24 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

13