In the Matter of the Vera **LYONS MARITAL TRUST** Created Under Article 4 of the Last Will and Testament of M. Arnold Lyons, Dated October 9, 1985.

In the Matter of M. Arnold Lyons Family Trust Created Under Article 4 of the Last Will and Testament of M. Arnold Lyons, Dated October 8, 1985.

In the Matter of the Vera Lyons Revocable Trust Created Under Agreement dated May 31, 1988.

No. A05–1774.

Court of Appeals of Minnesota.

July 18, 2006.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Richard J. Schieffer, Anderson Dove Fretland & Van Valkenburg, P.L.L.P., Minneapolis, MN, for appellants Andrew W. Buirge & William C. Buirge.

Christopher T. Shaheen, Peter S. Hendrixson, William J. Berens, Dorsey & Whitney L.L.P., Minneapolis, MN, for respondent Barbara Hobbs.

Stephen R. Litman, Leonard, Street, and Deinard, Minneapolis, MN, for all trustees.

Considered and decided by RANDALL, Presiding Judge, WILLIS, Judge, and PARKER, Judge.*

## OPINION

RANDALL, Judge.

On appeal from an order reforming Vera Lyon's will and revocable trust agreement that was based on a determination that Vera Lyons improperly exercised a special power of appointment over her deceased husband's family trust in favor of her revocable trust, appellants argue that the district court erred by reforming the trust. Because the district court correctly held that Vera Lyon's exercise of her special power of appointment was an invalid appointment, we affirm on that issue. But because the testamentary documents are unambiguous, the district court had no authority to reform the will, and, therefore, we reverse and remand on that issue.

## FACTS

This case arises out of a dispute concerning the estates of M. Arnold Lyons (hereinafter Arnold) and his wife Vera Lyons (hereinafter Vera). Arnold and Vera's marriage produced three children, Lisa Lyons, David Lyons, and respondent Barbara Hobbs (hereinafter respondent) all of whom survive. Appellants Andrew Buirge and William Buirge (hereinafter appellants) are adult sons of respondent and grandchildren of Arnold and Vera.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

In October 1985, approximately two years prior to his death, Arnold executed a will that distributed the assets of his estate into two trusts, the marital trust and the family trust. The marital trust was created solely for the benefit of Arnold's wife, Vera, and contains a general testamentary power of appointment exercisable by Vera with no limitation upon possible beneficiaries. Arnold's will also granted Vera a special testamentary power of appointment over the family trust, which power is exercisable in favor of his children or their issue. The will provided that the family trust is not exercisable in favor of Vera, her estate, or her creditors. The will also defined Arnold's "children" as "DAVID LYONS and LISA LYONS and shall not mean [respondent]." The will further stated that:

> [respondent] is specifically excluded from the provisions of this will. All references in this will to "issue" of my children shall include the issue of DAVID LYONS and LISA LYONS but shall not include any issue of [respondent] *except* [appellants] and their issue for whom I have specifically provided in this will.

In May 1988, shortly after Arnold's death, Vera executed a revocable trust agreement. Vera's trust provided that upon her death, the balance of the trust estate "shall be divided by the Trustees into as many separate shares, as nearly equal in value as possible, as there are children of the Grantor then living...." Also in May 1988, Vera executed a will that devised the residue of her probate estate to Vera's trust. At about the same time, Vera exercised her special power of appointment under the family trust and the general power of appointment under the marital trust to distribute the assets of these trusts to Vera's trust. Vera's exercise of her powers of appointment effectively mandated that the assets of the family trust and the marital trust be divided equally among her three children.

After Vera's death in 2003, the trustees of the family trust, marital trust, and Vera's trust petitioned for an order instructing them relating to the proper administration and distribution of the trusts and discharge of their duties. The trustees' petition alleged that it was their belief that Vera's exercise of the special power of appointment over Arnold's family trust was invalid because it would ultimately result in the transfer of a beneficial interest in the family trust to respondent, a prohibited beneficiary. The trustees' petition also alleged that it was their belief that a proper interpretation of the Arnold family trust would be to distribute the balance thereof as follows: one-third to Lisa Lyons, one-third to David Lyons, and one-third to appellants respectively. The petition further alleged the trustees' belief that Vera's revocable trust and Arnold's marital trust should be distributed to Lisa Lyons, David Lyons, and respondent in equal shares in accordance with Vera's testamentary plan.

In response to the trustees' petition, respondent asked the district court to reform Vera's will and trust to correct her invalid exercise of the special power of appointment and effectuate Vera's clear intent to benefit all three of her children equally. The trustees took no position on the reformation issue, and during an October 2004 pretrial conference, the parties agreed that the matter could be submitted to the court for a decision on the merits based upon written submissions and arguments of the parties.

On December 7, 2004, respondent filed her memorandum in objection to the trustees' petition. The matter was heard before a referee who subsequently submitted his recommended findings and order to the

district court. The district court adopted the findings and issued an order reforming Vera's will and Vera's revocable trust. The district court found that there was "clear and convincing" evidence from Vera's testamentary instruments that she intended to benefit all three of her children equally. The district court also found that Vera did not intend to exercise ineffectively her special power of appointment, and, thus, there was also a clear mistake of law. The district court concluded that because these two conditions had been satisfied, the court had the authority under Minnesota law and the various Restatements of the Law to reform the will and trust. The district court's reformation of the will effectively distributed the assets of the family trust, the marital trust, and Vera's trust equally among Lisa Lyons, David Lyons, and respondent.

In response to the district court's order, appellants filed a notice of review and a motion seeking an evidentiary hearing. The district court denied the motion. This appeal followed.

## ISSUE

Did the district court err in reforming Vera's testamentary documents when both the will and the trust are unambiguous?

## ANALYSIS

 Appellants argue that because Vera's exercise of her special power of appointment under the family trust was invalid, and because all of the testamentary documents are unambiguous, the district court erred by reforming Vera's will and trust. This court reviews a "district court's construction of an unambiguous instrument de novo." *In re Estate and Trust of Anderson,* 654 N.W.2d 682, 687 (Minn. App.2002), *review denied* (Minn. Feb. 26, 2003).

It is undisputed that Vera's exercise of her special power of appointment over the family trust was invalid. Thus, we affirm the district court's determination on that issue. But it is also clear that the testamentary documents are unambiguous. Historically, where a will is unambiguous, the testator's intent controls and the district court will attempt to effectuate the testator's intent without the admission of extrinsic evidence. *In re Estate of Cole,* 621 N.W.2d 816, 818 (Minn.App.2001). Respondent argues that recent changes in probate law provide courts with the authority to reform unambiguous wills where there is clear and convincing evidence of the testator's intent.

Support for allowing courts to reform unambiguous wills comes from the following reasoning in the Restatement:

When a donative document is unambiguous, evidence suggesting that the terms of the document vary from intention is inherently suspect but possibly correct. The law deals with situations of inherently suspicious but possibly correct evidence in either of two ways. One is to exclude the evidence altogether, in effect denying a remedy in cases in which the evidence is genuine and persuasive. The other is to consider the evidence, but guard against giving effect to fraudulent or mistaken evidence by imposing [the clear and convincing] standard of proof. In choosing between exclusion and high-safeguard allowance of extrinsic evidence, this Restatement adopts the latter. Only high-safeguard allowance of extrinsic evidence achieves the primary objective of giving effect to the donor's intention.

Restatement (Third) of Prop.: Wills and Other Donative Transfers 12.1 cmt. b. The comments to the Restatement further observe that:

This section unifies the law of wills and will substitutes by applying to wills the standards that govern other donative documents. Until recently, courts have not allowed reformation of wills. The denial of a reformation remedy for wills was predicated on observance of the Statute of Wills, which requires that wills be executed in accordance with certain formalities. Reforming a will, it was feared, would often require inserting language that was not executed in accordance with the statutory formalities. Section 11.2, however, authorizes inserting language to resolve *ambiguities* in accordance with the donor's intention. As noted in § 11.2, Comment *c*, modern authority is moving away from insistence on strict compliance with the statutory formalities on the question of initial execution of wills.

The trend away from insisting on strict compliance with statutory formalities is based on a growing acceptance of the broader principle that mistake, whether in execution or in expression, should not be allowed to defeat intention. A common principle underlies the principle of this section, which authorizes reformation of unambiguous donative documents (including wills) to correct mistakes, and the movement (1) to excuse defective execution under § 3.3 and (2) to authorize insertion of language to resolve ambiguities in donative documents under § 11.2.

*Id.* at cmt. c.

 Respondent argues that the district court had authority to reform Vera's testamentary documents because this court has adopted the reasoning set forth in the Restatement for reforming unambiguous donative instruments. To support her claim, respondent cites *Magnuson* where the donative instrument at issue was a deed by which the deceased father purported to leave his residential property to his children so that the children inherited as joint tenants rather than as tenants in common. *Magnuson v. Diekmann,* 689 N.W.2d 272, 274 (Minn.App.2004). Relying on the Restatement (Third) of Property: Wills and Other Donative Transfers, this court stated that:

A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor's intention was. In determining whether these elements have been established by clear and convincing evidence, direct evidence of intention contradicting the plain meaning of the text as well as other evidence of intention may be considered.

*Id.* at 274–75 (quoting Restatement (Third) of Prop.: Wills and Other Donative Transfers 12.1 (2003)). The court also stated that: "Using the equitable remedy of reformation to correct a mistake is necessary to prevent unjustly enriching the mistaken beneficiary at the expense of the intended beneficiary." *Id.* at 275 (quoting Restatement (Third) of Prop.: Wills and Other Donative Transfers 12.1 cmt. b). The court held that because there was clear and convincing evidence of the deceased father's intention to leave his property to his children as joint tenants, reformation of the deed was appropriate. *Id.* at 276. Respondent acknowledges that the *Magnuson* case addressed a deed rather than a will, but argues that the court's reasoning should be extended to apply to wills. We cannot come to respondent's conclusion. Despite the similarities between wills and the donative instrument at issue in Magnuson, Minnesota caselaw specifically states that: "[a] deed creating by mistake a ten-

ancy in common, where a joint tenancy was intended, will be reformed." *Papke v. Pearson,* 203 Minn. 130, 137, 280 N.W. 183, 186 (1938). Minnesota law with respect to wills *does not* contain such an express instruction. Rather longstanding Minnesota law provides that when the language of a will is free from reasonable doubt, there is no room for construction or interpretation. *In re Davidson's Will,* 223 Minn. 268, 274, 26 N.W.2d 223, 226 (1947). There is little support among other states to adopt the Restatement's position on the reformation of wills. *See, e.g., Bongaards v. Millen,* 440 Mass. 10, 793 N.E.2d 335, 348 (2003) (declining to follow the Restatement as it applies to the reformation of wills); *Flannery v. McNamara,* 432 Mass. 665, 738 N.E.2d 739, 746 (2000) (declining to follow Restatement (Third) of Prop.: Wills and Other Donative Transfers 12.1 allowing reformation of unambiguous will); *Noble v. Bruce,* 349 Md. 730, 709 A.2d 1264, 1277 (1998) (recognizing the longstanding rule against the reformation of wills in Maryland); *Brinker v. Wobaco Trust Ltd.,* 610 S.W.2d 160, 165 (Tex.Civ. App.1980) (reforming inter vivos trust to correct a well-proved mistake in drafting but adhering to the rule that a will is not subject to reformation).

Here, Arnold's testamentary documents are unambiguous. Vera's intent was clear—to circumvent Arnold's intent—but her invalid exercise of the special power of appointment over the family trust prevented her from carrying out her intent. Respondent concedes that, which stops the inquiry as there is no authority for the Minnesota courts to reform an unambiguous will.

## DECISION

The district court correctly held that Vera's exercise of her special power of appointment under the family trust was invalid. But where the testamentary documents are unambiguous, the district court did not have authority to reform Vera's will and trust. Accordingly we reverse and remand for an order in accordance with the distribution proposed by the trustees in their petition.

**Affirmed in part, reversed in part, and remanded.**