DA 11-0488

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 116

CASSADIE PARISH and CHRIS PARISH,

      Plaintiffs and Appellants,

  v.

EMILY ANN MORRIS; UNITED FINANCIAL
CASUALTY INSURANCE COMPANY
and JOHN DOES 1-6,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 08-746(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Michael A. Bliven, Alex K. Evans, Anderson & Bliven, P.C.,
Kalispell, Montana

      For Appellees:

            Robert J. Phillips, Amy O. Duerk, Phillips Haffey PC, Missoula, Montana

Submitted on Briefs: April 17, 2012

Decided: May 29, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Cassadie and Chris Parish were injured in a motor vehicle accident on December 31, 2007, when their vehicle was struck by uninsured driver Emily Ann Morris. United Financial Casualty Insurance Company (UFC) provided insurance coverage to the Parishes, including uninsured motorist (UM) coverage. The Parishes, who had two vehicles insured on their UFC policy at the time of the accident, argued they should be permitted to stack the UM benefits provided in their policy. UFC refused, stating the Parishes' policy did not allow stacking. The Parishes sued seeking declaratory judgment. UFC filed a motion for summary judgment. The Eleventh Judicial District Court in Kalispell, Montana, granted UFC's motion. Parishes appeal. We affirm.

## ISSUE

¶2 A restatement of the dispositive issue on appeal is:

¶3 Did the District Court err in granting UFC's motion for summary judgment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The Parishes obtained motor vehicle insurance coverage from UFC on May 8, 2007, and remained insured by UFC until September 18, 2008. Throughout this time, the Parishes' policy alternatively covered one or two vehicles per the Parishes' instruction to UFC. Specifically, from May 8, 2007, through January 8, 2008, the policy covered two vehicles. From January 9 through February 22, 2008, the policy covered a single vehicle. From February 23 until July 2008, the policy again covered two vehicles. For a few days

2

in July 2008, the Parishes insured one car. At the time of cancellation, two cars were covered by the policy.

¶5      From May 8, 2007, through May 7, 2008, irrespective of the number of vehicles protected by the policy, the premium for UM coverage was $73. Upon renewal of the policy on May 8, 2008, the UM premium increased to $82. The Declarations page of the policy stated that for the UM premium—whether $73 or $82—the insured received a "$50,000 each person/$100,000 each accident" coverage benefit. The policy further stated "The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits." The Parishes' policy did not contain a provision allowing stacking.[1] Rather, the applicable endorsement form stated "The limit of liability shown on the Declarations Page for the coverages under this endorsement is the most we will pay regardless of the number of claims made, or insureds, or lawsuits brought, or vehicles involved in the accident." The Parishes' policy also provided medical payment (MP) benefits of $5,000 per person. The policy provided that MP benefits could not be stacked; however, UFC acknowledges that the Parishes paid a separate premium for MP for each insured vehicle.

¶6      Following the accident, UFC paid Chris and Cassadie $60,000 each—$10,000 for MP benefits and $50,000 for UM benefits. It is undisputed that the damages Chris

---

[1] "Stacking" means to add the policy limit of UM, underinsured motorist (UIM), or medical pay coverage from an insurance policy on one vehicle with the UM, UIM and medical pay policy limits from the policy on another vehicle. For example, an insured with three vehicles and paying a separate premium for UIM coverage on each vehicle could "stack," or add, the three UIM coverages together and feasibly collect the triple amount. *See Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892.

sustained did not exceed the $60,000 UFC paid to him. However, Cassadie's damages at the time this action was filed exceeded the $60,000 in benefits paid to her.

¶7     The Parishes made a claim with UFC for $100,000 per person/$200,000 per accident in UM benefits, claiming a right to stack coverages for each vehicle insured. When UFC refused to stack the UM coverage of their policy, the Parishes sought declaratory judgment.[2] UFC moved for summary judgment asserting that no material facts were in dispute. It argued that the issue before the District Court was purely the interpretation of the insurance contract and the applicable statute. The insurer submitted that (1) it was in compliance with Montana's anti-stacking statute, § 33-23-203, MCA; (2) its insurance forms clearly stated that stacking is not allowed; and (3) the Parishes did not pay separate premiums for UM coverage on separate vehicles and therefore, in accordance with applicable case law, UFC was not required to stack UM benefits.

¶8     Parishes challenged UFC's claim of compliance with § 33-23-203, MCA. They argued that UFC did not file its premium rates with the Montana Commissioner of Insurance until October 2007—*after* the Parishes had purchased their policy—and because such filing cannot be applied retroactively, UFC did not meet the requirements of the statute. The Parishes further asserted that the insurance policy was ambiguous and should be construed against UFC and that they had a reasonable expectation that they could receive stacked UM coverage.

---

[2] The Parishes also sued Morris, the other driver, for negligence and negligence per se. Their action against Morris is not the subject of this appeal.

4

¶9	Noting the evidence presented by UFC to the effect that it had submitted its premium rates to the Insurance Commissioner in November 2006 and that the Parishes paid one premium, not two, for UM coverage on both cars, the District Court granted UFC's motion for summary judgment. Parishes appeal.

## STANDARD OF REVIEW

¶10	We review the grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria used by the district court. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Kichnet v. Butte-Silver Bow County & Mont.*, 2012 MT 68, ¶ 11, 364 Mont. 347, ___ P.3d ___. The district court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a conclusion of law which we review for correctness. *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 8, 364 Mont. 455, ___ P.3d ___. (Citations omitted.)

## DISCUSSION

¶11	*Did the District Court err in granting UFC's motion for summary judgment?*

¶12	The relevant statute in this case, § 33-23-203(1), MCA, was revised by the Montana Legislature in 2007 and became effective on April 17, 2007. The amended statute provides the following limitation of liability under a motor vehicle liability policy:

> (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, or the number of separate premiums paid:
>
> .  .  .

(c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with the commissioner.

¶13 To alert insurers of the newly amended statute, the Insurance Commissioner issued an Advisory Memorandum on August 29, 2007, stating, among other things:

Prior to the . . . amendments, insureds in many circumstances have been able to "stack" (combine in the aggregate) their medical payments coverages, uninsured motorist coverages (UM), and underinsured motorist coverages (UIM) when separate premiums were paid for each coverage for each vehicle.

The new statute provides that an insurer can avoid stacking "if the premiums charged for the coverage by the insurer actuarially reflect the limiting of coverage separately to the vehicles covered by the policy and the premium rates have been filed with [C]ommissioner." An insurer seeking to avoid stacking must file new premium rates with an actuarial certification and supporting actuarial documentation demonstrating that the new rates reflect limiting coverage. New policy forms stating that coverage will be limited (not stacked) would also need to be filed separately from the rate filing and approved by the Commissioner.

¶14 On appeal, Parishes raise the following arguments in support of their demand for stacked UM benefits: (1) UFC did not file their forms under § 33-23-203(1)(c), MCA, until October 11, 2007, more than five months after issuing the Parishes' policy, and such filing cannot be applied retroactively; (2) UFC documents filed with the Insurance Commissioner indicate that UFC was charging UM on a "per vehicle" basis rather than a "per policy" basis; (3) UFC's policy is ambiguous because UFC stacked MP coverage for the Parishes but refused to stack UM coverage; (4) UFC's insurance agreement created a reasonable expectation of stacked UM coverage; and (5) UFC failed to meet its summary

6

judgment burden because the affidavits submitted to the District Court to support its motion were inadmissible based upon irrelevancy.

¶15     UFC addresses each argument. It asserts that it began charging insureds a single premium for UM coverage in December 2006, irrespective of the number of vehicles insured under a policy. Evidence of UFC's change to a single premium UM policy was presented by an initial affidavit and a supplemental affidavit of Matthew Marcinek, a product manager and actuary for UFC. Attached to Marcinek's affidavit is UFC's rate filing document filed with the Montana Commissioner of Insurance by UFC analyst Hollie O'Toole on November 6, 2006. This document was filed before UFC began selling the single UM premium insurance in December 2006. Marcinek's affidavit acknowledges that UFC filed its rate calculations again with the Insurance Commissioner on October 11, 2007, as claimed by the Parishes. The affidavit further indicates that the premium charged for the UM coverage actuarially reflected the limitation of coverage separately to the vehicles covered by the Parishes' policy (as required by § 33-23-203(1), MCA) and that the premium calculation formula utilized for UM coverage did not change during the time the Parishes were insured by UFC. UFC therefore maintains that it was in compliance with § 33-23-203, MCA.

¶16     The Parishes claim that UFC charged its UM premiums based on a "per vehicle" rather than a "per policy" basis. Marcinek's affidavits and the Parishes' policy establish the contrary. As noted in ¶ 5, UFC charged Parishes one premium for UM coverage, regardless of the number of vehicles currently insured. Parishes' claim that the calculation of the premium was done on a per vehicle basis notwithstanding, the question

7

here is whether Parishes were *charged* separate UM premiums for each insured vehicle. The evidence clearly establishes they were not.

¶17 UFC also denies that its policy is ambiguous. First, it contends the policy clearly and expressly notifies insureds that stacking UM coverage is not allowed. Second, UFC acknowledges that while the policy also precludes stacking MP coverage, it nonetheless stacked the MP coverage for the Parishes. It submits, however, that because MP benefits are not at issue in this matter, it is irrelevant that UFC stacked the Parishes' medical benefits. UFC further maintains that stacking MP did not in any way create an ambiguity regarding UM coverage under the policy. UFC explains that its decision to stack MP was based upon Montana public policy requiring stacking if an insured paid *separate* premiums for benefit coverage on multiple vehicles. *Hardy*, ¶ 40 ("[A] Montanan could reasonably expect coverage up to the aggregate limit of the separate policies when a separate premium for . . . coverage was charged for each."); *State Farm Mut. Auto. Ins. Co. v. Gibson*, 2007 MT 153, ¶ 11, 337 Mont. 509, 163 P.3d 387 ("Although *Hardy* . . . involved underinsured motorist coverage, we have applied the same public policy considerations to [medical payments coverage] and held that when an insurer receives valuable consideration for each policy, the insurer cannot refuse to pay the benefits due pursuant to each policy.").

¶18 We must interpret an insurance contract as we would any contract. The words of the policy must be understood in their usual meaning. *Dakota Fire Ins. Co. v. Oie*, 1998 MT 288, ¶ 15, 291 Mont. 486, 968 P.2d 1126. We acknowledge that the Declarations page of the Parishes' policy does not address stacking. However, the Declarations page

8

is designed to give the insured an overview of the major aspects of the policy and not to provide the detailed terms and conditions. *Farmers Alliance Mut. Ins. Co. v. Miller*, 869 F.2d 509, 512 (9th Cir. 1989).

¶19   As noted above, the policy and the endorsement form made it clear that stacking would not be permitted. The policy was not ambiguous.

¶20   Addressing the Parishes' claim that they reasonably expected to be able to stack their UM benefits, UFC counters that given that its policy language on this point is clear and unambiguous, there is nothing in the policy that could be reasonably interpreted as stating or implying that UM liability coverage could be stacked. UFC argues that "expectations which are contrary to a clear exclusion from coverage are not objectively reasonable." *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 30, 304 Mont. 356, 22 P.3d 631. (Citation omitted.)

¶21   It is apparent from the evidence in the record that the Parishes paid one premium for UM coverage for both of their vehicles. In all cases cited by the Parishes, the insurance companies were charging their insureds separate premiums for each insured vehicle. In those cases, we held that the insurance company was receiving valuable consideration to provide coverage on every insured vehicle, and therefore the insureds should be allowed to stack their coverages upon filing a legitimate claim. These cases are inapposite to the case before us. *Hardy*, ¶ 42 ("[A]n anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy. To the extent that the premium charged for the second and third vehicles were disproportionate to the coverage provided,

9

the anti-stacking provisions in Hardy's policy cannot be enforced."); *Bennett v. State Farm Mutual Auto. Ins. Co.*, 261 Mont. 386, 388-898, 62 P.2d 1146, 1148 (1993) ("[W]here separate premiums have been charged and collected on each vehicle for uninsured motorist coverage, the insured is entitled to recover up to the aggregate sum of the coverages on all the vehicles so insured."). Here, only one premium was charged for UM coverage throughout the life of the policy.

¶22 Lastly, UFC argues that the District Court did not err in refusing to strike certain affidavits and attachments from the record. UFC notes the Parishes did not file a motion to strike in District Court and, furthermore, there was no basis for striking the evidence. The insurer posits that the Declarations pages submitted were presented as evidence that UFC charges one premium for UM coverage regardless of the number of vehicles insured under a single policy and therefore, and despite the post-accident date of the submitted evidence, it was relevant.

¶23 We conclude that the District Court did not err in admitting UFC's affidavits and attachments. First, the Parishes did not ask the District Court to strike the evidence. And second, the evidence was relevant. UFC submitted the Parishes' policy covering the period from May 8, 2007, through May 7, 2008. It indicated a single UM premium of $73 for two vehicles. The Parishes' accident occurred during the term of this policy. After the accident, they notified UFC to remove their wrecked vehicle from the policy. As a result a new policy was issued for a single vehicle. The Declarations page for the new policy indicated one vehicle but the UM premium of $73 remained the same. UFC also submitted the Declarations page for the Parishes' subsequent policies, each

10

illustrating that regardless of the number of vehicles being insured the UM premium remained the same. We conclude such evidence was relevant to the issue before the District Court and was correctly admitted.

¶24 Parishes raise a new legal argument in their reply brief in which they assert that Marcinek's affidavit should have been stricken for lack of personal knowledge of the Parishes' insurance policy. They claim that because Marcinek was not working for UFC at the time UFC first issued its policy to the Parishes in May 2007, he had no personal knowledge of the circumstances. As the Parishes did not present this legal argument to the District Court, they did not preserve it for appeal. *Hunt v. K-Mart Corp.*, 1999 MT 125, 294 Mont. 444, 981 P.2d 275. Moreover, we do not allow appellants to raise new legal arguments in their reply briefs. Arguments must be raised in an appellant's initial brief to allow the appellee an opportunity to respond. M. R. App. P. 23(c).

¶25 As the Parishes do not prevail on appeal, we need not address their claim for attorney fees.

## CONCLUSION

¶26 For the foregoing reasons, we affirm the District Court's ruling granting UFC's motion for summary judgment.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON