DA 12-0603

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 271

THE ESTATE OF VA VA IRVINE,

        Petitioner and Appellant,

    v.

ERIK & DEBBIE OAAS, Co-Personal
Representatives of The Estate of
John Winkley Irvine, Jr.,

        Respondents & Appellees,

    and

MICHAEL DODGE,

        Interested Party and Appellee,

    and

SHODAIR CRIPPLED CHILDREN'S
HOSPITAL,

        Interested Party and Appellee.

APPEAL FROM:    District Court of the Second Judicial District,
                      In and For the County of Butte/Silver Bow, Cause No. DP 09-57
                      Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Justin Starin; McKenna & Starin, PLLC, Missoula, Montana
                Mary Kay Starin; Mary Kay Starin, PC, Butte, Montana

For Appellees:

Jeffrey W. Dahood; Bernard J. "Ben" Everett; Knight, Dahood, Everett & Sievers, Anaconda, Montana (*Attorneys for Erik and Debbie Oaas*)

Robert J. Whelan, Frank J. Joseph, Butte, Montana (*Attorneys for Interested Party Michael Dodge*)

John F. Sullivan; Kate McGrath Ellis; Hughes, Kellner, Sullivan & Alke, PLLP, Helena, Montana (*Attorneys for Interested Party Shodair Crippled Children's Hospital*)

Submitted on Briefs:  April 24, 2013

Decided:   September 17, 2013

Filed:

_____
Clerk

2

Chief Justice McGrath delivered the Opinion of the Court.

¶1     The Estate of Va Va Irvine appeals from an order of the Second Judicial District Court, Silver Bow County, that granted summary judgment to Michael Dodge. We affirm.

¶2     We restate the dispositive issues on appeal:

¶3     *Issue One: Whether the District Court correctly determined that the contracts could not be reformed.*

¶4     *Issue Two: Whether the District Court correctly determined that proceeds from the decedent's investment accounts were properly paid to his estate.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     John Winkley Irvine, Jr. (John) married Deana Dodge (Deana) in 1979. When they got married, Deana had a son, Michael Dodge (Dodge), from a prior marriage. John had no other children. John and Deana executed wills in 1983 that included Dodge as a beneficiary. Many years later, John executed a number of written beneficiary designations for various investment accounts that he owned.

¶6     Three of John's accounts are relevant to the case at bar, a Hartford Director Annuity (Hartford Account), a Pacific Life Individual Retirement Account (Pacific Life Account), and a Northwestern Energy Retirement Account (Northwestern Account). John executed the written beneficiary designations for each of the accounts between 2003 and 2006. For the Hartford Account and Pacific Life Account, John named Deana as the

3

primary beneficiary and the "estate of the annuitant" as the contingent beneficiary. John also listed Deana as the primary beneficiary for the Northwestern Account, but he did not name a contingent beneficiary for that account.

¶7 Deana died in August of 2008. Ten months later, John died on June 30, 2009. Upon John's death, the proceeds from all three accounts were paid to his estate. In 2011, we affirmed the validity of John's 1983 will in an unpublished opinion. *See In re Est. of Irvine*, 2011 MT 37N, 264 P.3d 127 (Table). John's mother, Va Va Irvine (Va Va), has since sought a declaratory judgment that she is the sole beneficiary of all three accounts, which Dodge has opposed.[1] After conducting discovery, Va Va and Dodge both filed summary judgment motions.

¶8 Va Va argued that John had intended for her to be the contingent beneficiary for all three accounts. To support her contention, Va Va offered testimony from John's financial planner, Steven Daniel (Daniel). In a deposition on July 13, 2011, Daniel testified that he had helped John execute beneficiary designation forms for a number of accounts, including the Hartford Account and the Pacific Life Account. According to Daniel, John had told him that he wanted the proceeds of his accounts to pass to Deana or, if Deana died before he did, to Va Va or his brother, William. Daniel claimed that John clearly told him that he did not want Dodge to receive the proceeds of the accounts.

¶9 Daniel testified that he had asked John multiple times if he had a will. According to Daniel, John told him that he did not. Because Daniel did not know about John's 1983

---

[1] Va Va has since died and her estate has been substituted as the petitioner, but we continue to refer to Va Va as the party involved for clarity.

4

will, Daniel advised John that if he designated his estate as the contingent beneficiary and Deana died before he did, then, under the laws of intestacy, the proceeds of his accounts would pass first to Va Va and then to William. Daniel testified that he had filled out the forms for John that designated John's estate as his contingent beneficiary and had watched him sign them.

¶10 Va Va argued to the District Court that Daniel's testimony proves that John had intended to benefit his estate under the laws of intestacy, not under the terms of his 1983 will, if Deana died before him. Because John thought that Va Va would inherit the proceeds through his estate under the laws of intestacy, Va Va argued that the court should determine that she is John's contingent beneficiary to fulfill John's intent. Va Va also argued that Daniel's testimony established John's intent regarding the Northwestern Account even though Daniel had not helped John with that account and John had not designated a contingent beneficiary. Alternatively, Va Va argued that the written contracts should be reformed for mutual mistake due to Daniel's erroneous belief that John did not have a will when he executed the beneficiary designation forms.

¶11 The District Court held a joint hearing on Va Va's and Dodge's competing motions for summary judgment on August 29, 2012. In an order issued on October 2, 2012, the District Court concluded that Dodge was entitled to summary judgment under the contract terms and that no legal basis exists to require reformation of the contested contracts. Va Va appeals from that order.

5

## STANDARD OF REVIEW

¶12 We review de novo a district court's rulings on motions for summary judgment. *Parish v. Morris*, 2012 MT 116, ¶ 10, 365 Mont. 171, 278 P.3d 1015. Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56; *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 11, 366 Mont. 285, 291 P.3d 1082. Summary judgment is not appropriate where there is a genuine dispute over facts that could affect the outcome of the suit under the substantive law governing the cause of action. *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 15, 352 Mont. 401, 219 P.3d 492. If a reasonable fact-finder could return a verdict for the non-moving party, there is a genuine dispute precluding summary judgment. *Broadwater*, ¶ 15. All reasonable inferences must be drawn in favor of the non-moving party. *Hopkins v. Super. Metal Workings Sys., L.L.C.*, 2009 MT 48, ¶ 5, 349 Mont. 292, 203 P.3d 803.

## DISCUSSION

¶13 *Issue One: Whether the District Court correctly determined that the contracts could not be reformed.*

¶14 A court's equitable power to reform a contract is codified at § 28-2-1611, MCA. When a written contract does not express the intention of the parties due to fraud, mutual mistake, or a mistake by one of the parties that the other party knew of or suspected, the contract may be revised to reflect their true intention. Section 28-2-1611, MCA; *E. H. Oftedal & Sons, Inc. v. State*, 2002 MT 1, ¶ 47, 308 Mont. 50, 40 P.3d 349. A court is not limited only to correcting errors in the language of the instrument, but may inquire

into the intended meaning and effect of the instrument. Section 28-2-1613, MCA. The mutual intent of the parties serves as the standard from which the instrument may be reformed. *Sullivan v. Marsh*, 124 Mont. 415, 422, 225 P.2d 868, 872 (1950). A court may not, therefore, create a "'new and different'" contract or make "'significant additions.'" *Rogers v. Relyea*, 184 Mont. 1, 10, 601 P.2d 37, 42 (1979) (quoting *Sullivan*, 124 Mont. at 422, 225 P.2d at 872).

¶15 While the mutual intent of the parties is the appropriate standard by which a contract may be reformed, a donative instrument is by its nature unilateral, and its terms depend only on the intent of the donor. *Laundreville v. Mero*, 86 Mont. 43, 56, 281 P. 749, 752 (1929) (allowing reformation of description of real property in deed based on unilateral mistake of donor). The Restatement (Third) of Property: Wills and Other Donative Transfers allows for the reformation of donative documents to correct unilateral mistakes by the donor:

> A donative document, though unambiguous, may be reformed to conform the text to the donor's intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor's intention was. In determining whether these elements have been established by clear and convincing evidence, direct evidence of intention contradicting the plain meaning of the text as well as other evidence of intention may be considered.

Restatement (Third) of Property: Wills and Other Donative Transfers § 12.1 (2003). Life insurance contracts are specifically included among those donative instruments that may be reformed even after the death of the donor. Restatement (Third) of Property: Wills and Other Donative Transfers § 12.1 cmt. c. Notably, Montana has recently adopted

7

§ 415 of the Uniform Trust Code, which copies § 12.1 of the Restatement and allows for reformation of trusts based on clear and convincing evidence of mistake by the settlor. Section 72-38-415, MCA; Unif. Trust Code § 415 cmt. (2011). Other jurisdictions have relied on the Restatement to allow the reformation of donative instruments including trusts and deeds. *Pullum v. Pullum*, 58 So. 3d 752, 759 (Ala. 2010) (applying Restatement to reform property description); *Magnuson v. Diekmann*, 689 N.W.2d 272, 274-75 (Minn. App. 2004) (applying Restatement to reform deed granting tenancy in common rather than joint tenancy); *Clairmont v. Larson*, 831 N.W.2d 388, 394 (N.D. 2013) (citing commentary to Restatement for interpretation of Unif. Trust Code § 415); *Generaux v. Dobyns*, 134 P.3d 983, 989-90 (Or. App. 2006) (adopting similar provision of Restatement (Second) of Property to rescind trust); *but see In re Lyons Marital Trust*, 717 N.W.2d 457, 461-62 (Minn. App. 2006) (declining to apply Restatement with respect to reformation of wills).

¶16 This Court finds the Restatement to be persuasive and consistent with Montana law. We adopt the Restatement as it pertains to donative instruments other than wills.

¶17 Nevertheless, we find that reformation is not an appropriate remedy here. First, we find that there is not clear and convincing evidence of a mistake by the donor in this case. Second, we find that although a donative instrument may, in some circumstances, be subject to reformation after the death of the donor, permitting a stranger to the contract to request reformation in order to name herself a beneficiary goes beyond the appropriate scope of this remedy.

¶18   The evidence in this case does not show that any of the beneficiary designations are mistaken. Although the District Court did not consider Daniel's testimony when it concluded that the contracts could not be reformed, the remedy of reformation is not available even if Daniel's testimony is considered and believed. Daniel's testimony would have established that John decided to name his estate as contingent beneficiary of the Hartford and Pacific Life Accounts. After consultation with Daniel in which they discussed potential beneficiaries, John decided not to specifically name Va Va as a contingent beneficiary on either account, and instead to name his estate. The contracts correctly reflect that decision, and thus there is no evidence of mistake. Whether that decision was sound is not a matter for this Court to decide. Daniel's testimony does not address John's decision not to name a contingent beneficiary on the Northwestern Account. Even with all inferences drawn in favor of Va Va, she has not presented evidence sufficient to allow a reasonable fact-finder to return a verdict in her favor under the clear and convincing standard required to support an action for reformation.

¶19   Furthermore, we find that reformation to allow a third party to alter a beneficiary designation in her favor is not appropriate. The circumstances in which this and other courts have permitted reformation of a donative instrument are markedly different from the present case. Reformation has been granted to correct mistaken property descriptions, *Pullum*, 58 So. 3d at 754-55; *Laundreville*, 86 Mont. at 48-49, 281 P. at 749; *Dowding v. Dowding*, 40 N.W.2d 245, 246 (Neb. 1949), or mistakes in the estate or tenancy conveyed, *Yano v. Yano*, 697 P.2d 1132, 1133 (Ariz. App. Div. 1 1985); *Tyler v. Larson*, 235 P.2d 39, 40 (Cal. App. 2d Dist. 1951); *Magnuson*, 689 N.W.2d at 273. Reformation

9

is most commonly granted at the request of the donor or his or her personal representative. *Pullum*, 58 So. 3d at 755; *Yano*, 697 P.2d at 1134; *Tyler,* 235 P.2d at 39; *Clairmont*, 831 N.W.2d at 389; *Generaux,* 134 P.3d at 984. Reformation may also be granted at the request of the donee if the error is not discovered until after the donor's death. *Magnuson*, 689 N.W.2d at 274; *Laundreville*, 86 Mont. at 55, 281 P. at 752; *Dowding,* 40 N.W.2d at 250. In cases where the donee was permitted to reform against the heirs of the donor, the donee was already clearly named in the document. *Magnuson*, 689 N.W.2d at 273-74; *Laundreville*, 86 Mont. at 49-50, 281 P. at 749; *Dowding,* 40 N.W.2d at 249.

¶20 The request for reformation presented in this case is of a different nature. Va Va is not a named beneficiary seeking to correct details of the contracts. Rather, she asks to name herself as an entirely new beneficiary. This is not an appropriate use of reformation. John executed two contracts naming his estate as beneficiary, and a third in which he declined to name any beneficiary. To insert Va Va as beneficiary would be to make a substantial addition resulting in a different contract, which a court may not do. *Rogers*, 184 Mont. at 10, 601 P.2d at 42. The District Court did not err when it concluded that the contracts could not be reformed.

¶21 *Issue Two: Whether the District Court correctly determined that proceeds from John's accounts were properly paid to his estate under the terms of the contracts.*

¶22 Having concluded that the District Court correctly determined that the written contracts should not be reformed, we now look at the terms of the contracts to determine if the District Court correctly determined that Dodge was entitled to summary judgment.

10

The interpretation of a written contract is a question of law. *King Resources, Inc. v. Oliver*, 2002 MT 301, ¶ 18, 313 Mont. 17, 59 P.3d 1172. When a contract has been reduced to writing, the intention of the parties is to be ascertained, if possible, from the writing alone. Section 28-3-303, MCA; *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, 127 P.3d 436. If the terms of a contract are unambiguous, a court must apply the language of the contract as written. *State v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272. A court considers extrinsic evidence when interpreting a contract only when the terms are ambiguous. *Rich v. Ellingson*, 2007 MT 346, ¶ 15, 340 Mont. 285, 174 P.3d 491. An ambiguity exists if the language of the contract, taken as a whole, is reasonably subject to two different interpretations. *Wurl*, ¶ 17.

¶23 John's written beneficiary designations specifically designated his estate as the contingent beneficiary. The term "estate" in this context has only one meaning and requires no further interpretation or consideration of extrinsic evidence. Because John's designation was clear, Daniel's testimony is not admissible to create an ambiguity where none exists. The District Court correctly determined that the proceeds from the Hartford and Pacific Life Accounts were properly paid to John's estate according to the express terms of the contracts.

¶24 As an interested party, Shodair Crippled Children's Hospital asserts that the District Court should have applied § 28-3-304, MCA, and disregarded the clear and unambiguous beneficiary designations. Section 28-3-304, MCA, provides that "[w]hen through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing

11

disregarded." Shodair argues that because of a mistake by John as to the existence of the 1983 will, the designations should be disregarded. However, John did not make a mistake as contemplated by the statute. Even when all reasonable inferences are drawn in Va Va's favor, the evidence still shows that John intended to list his estate as his contingent beneficiaries. Whether his decision to do so was sound, given the existence of his 1983 will, is not a matter for this Court's consideration. No part of the written beneficiary designations were erroneous, and § 28-3-304, MCA, is not applicable.

¶25 Moreover, § 28-3-304, MCA, governs the interpretation of contracts, not their reformation. Although § 28-3-304, MCA, is similar to § 28-2-1611, MCA, in that both address mistakes in written contracts, they were originally borrowed from different parts of the California Civil Code, respectively, "Contracts" and "Relief." Section 1640 Cal. Civ. Code (1885); § 3399 Cal. Civ. Code (1885). The codification of the Montana Code Annotated has maintained a distinction between the two. Section 28-3-304, MCA; § 28-2-1611, MCA. Accordingly, this Court has applied § 28-3-304, MCA, to disregard portions of a contract inconsistent with the parties' intention. *Pulse v. N. Am. Land Title Co.*, 218 Mont. 275, 281, 707 P.2d 1105, 1109 (1985) (deleting "no exceptions" clause from contract). Even if § 28-3-304, MCA, were applicable here, it would result only in disregarding the beneficiary designation of the Hartford and Pacific Life Accounts. It would not authorize the insertion of a new beneficiary designation. *See Bradbury v. Higginson*, 140 P. 254, 256 (Cal. 1914) (holding California statute identical to § 28-3-304, MCA, "cannot have the effect of authorizing a court, in the absence of a showing of a right of reformation, to find, upon oral testimony, that a written contract includes

12

provisions which do not appear upon its face, and to enforce such provisions as a part of the written contract.")

¶26 The District Court also correctly concluded that the proceeds from the Northwestern Account should be paid to John's estate. For the Northwestern Account, John designated Deana as the primary beneficiary but failed to designate a contingent beneficiary. The terms of the contract provide:

> If no beneficiary is named, or if no named beneficiary survives You, We may, at Our option, pay:
>
> 1) *the executors or administrators of Your estate*; or
> 2) all to Your surviving Spouse; or
> 3) if Your Spouse does not survive You, in equal shares to Your surviving Children; or
> 4) if no child survives You, in equal shares to Your surviving parents.

(Emphasis added.) Like the other accounts, the terms of the contract for the Northwestern Account are clear and unambiguous. According to the plain language of the contract, the proceeds of John's Northwestern Account were properly paid to his estate because he died without a surviving named beneficiary.

¶27 For the reasons stated above, the District Court's order that denied Va Va's motion for summary judgment and granted Dodge's motion for summary judgment is affirmed. Dodge's request for sanctions is denied.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT

13

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE