DA 13-0130

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 362N

RICHARD BURNETT, JERRY BURNETT,
MICHAEL JASON BURNETT, DAVID
BURNETT, Individually and; COLSTRIP
PROPERTIES, INC., WHISKY GULCH
SALOON, and CHERRY STREET GRILL,

Plaintiffs and Appellants,

v.

PPL MONTANA, LLC, WESTERN ENERGY
COMPANY, COLORADO ENERGY
MANAGEMENT, LLC, ROSEBUD OPERATING
SERVICES, INC., WESTMORELAND
RESOURCES, INC.,

Defendants and Appellees.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DV-11-42
Honorable Gary L. Day (deceased), Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Brad L. Arndorfer; Arndorfer Law Firm, P.C.; Billings, Montana

For Appellees:

Richard S. Mandelson; Baker & Hostetler, LLC; Denver, Colorado
(for PPL Montana, Inc.)

Laurence R. Martin; Felt, Martin, Frazier & Weldon, P.C.; Billings,
Montana (for Rosebud Operating Systems, Inc.)

Jason S. Ritchie, Michael Manning; Holland & Hart; Billings, Montana
(for Western Energy Company and Westmoreland Resources, Inc.)

Submitted on Briefs:  October 23, 2013
Decided:  December 3, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Richard Burnett is the father of co-plaintiffs Jerry, Michael Jason, and David Burnett. He is also the owner of Colstrip Properties, Whisky Gulch Saloon, and the Cherry Street Grill. From November 1989 until March 2002, Richard worked for PPL Montana. Richard's sons also worked in the electricity generating industry in Montana.

¶3 While employed by PPL, Richard led a group of co-employees and local residents who sued PPL and other defendants for violations of various environmental laws. PPL and its co-defendants settled the lawsuit by agreeing to pay approximately $25 million in damages. Prior to settlement, it terminated Richard's employment and as part of settlement, Richard agreed to never seek employment with PPL again.

¶4 Richard and his sons claim they have been unable to obtain work in the electricity generating industry in Montana since the environmental suit was filed. They claim that defendants/appellees PPL, Western Energy, Colorado Energy,[1] Rosebud Operating, and

---

[1] The District Court record does not contain any indication that Colorado Energy Management, LLC, was served with the Complaint or the First Amended Complaint. No attorney of record is listed in the case register nor did Colorado Energy make an appearance. For these reasons, reference to "defendants" in this Opinion shall be to PPL, Rosebud, Westmoreland and Western Energy and not to Colorado Energy.

3

Westmoreland entered into a conspiracy whereby these companies refused to employ Richard or his sons. Richard eventually obtained work out of state. Richard also claims that PPL conducted a pervasive campaign of boycotting his businesses, and the businesses of other plaintiffs, to punish them for pursuing the environmental lawsuit.

¶5 Richard and sons filed the case at bar against PPL and the other defendants in July 2011 in the Sixteenth Judicial District Court. They alleged civil conspiracy, unlawful restraint of trade, tortious interference with business opportunity, intentional interference with prospective economic advantage, and prima facie tort. Richard also asserted a blacklisting claim against PPL. Richard and his co-plaintiffs requested compensatory and punitive damages, injunctive relief, declaratory relief and attorney fees and costs.

¶6 On March 19, 2012, the District Court dismissed all claims against Western Energy, Westmoreland, and Rosebud with prejudice. The court also dismissed all claims against PPL with the exception of the blacklisting allegation. PPL moved for summary judgment on the blacklisting claim, and on December 4, 2012, the District Court granted summary judgment in favor of PPL and ordered all claims against PPL dismissed with prejudice. Final judgments in favor of all defendants were then entered. Richard and his co-plaintiffs appeal.

¶7 We review de novo a district court's order to dismiss an action for failure to state a claim. A district court's determination that a complaint failed to state a claim presents a conclusion of law, which we review for correctness. *Kananen v. South*, 2013 MT 232, ¶ 10, 371 Mont. 289, 307 P.3d 309. We review de novo a district court's ruling on a

4

motion for summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56 (Rule 56). *Estate of Irvine v. Oaas*, 2013 MT 271, ¶ 12, 372 Mont. 49, 309 P.3d 986.

¶8 Richard argues on appeal that the conspiratorial actions of defendants in refusing to hire him and his sons denied them their fundamental constitutional right to employment. The defendants counter that Richard's claim of conspiracy requires a wrongful act on their parts and they committed no wrongful acts. "The elements of a civil conspiracy are (1) two or more persons, and for this purpose, a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) *one or more unlawful overt acts*; and (5) damages as the proximate result thereof." *Schumacker v. Meridian Oil Co.*, 1998 MT 79, ¶ 18, 288 Mont. 217, 956 P.2d 1370 (emphasis added). Defendants claim that failing to employ Richard or his sons was not a wrongful or unlawful overt act, and therefore Richard could not establish the elements of his conspiracy claim.

¶9 Similarly, Westmoreland and Western Energy assert that as non-governmental employers, they could not violate Richard or his sons' Montana constitutional right to pursue employment. Moreover, they distinguish the right to *pursue* employment from the right to *obtain* employment with a particular employer. Westmoreland and Western Energy argue that they had no duty to hire the Burnetts and "were perfectly free to reject their job applications for any non-discriminatory reason."

¶10 Richard also appeals the District Court's ruling on his "tortious interference with a business" claim. He argues that the defendants, in concert, intentionally boycotted his businesses. He maintains that the boycotts were calculated to cause damage to his businesses, were done with unlawful purposes and resulted in damages. *Maloney v. Home Inv. Ctr., Inc.*, 2000 MT 34, ¶ 41, 298 Mont. 213, 994 P.2d 1124. The defendants counter that even if representatives of the various defendant companies chose to stop patronizing establishments owned by Richard, such was not unlawful activity and cannot form the basis of a cause of action—whether entitled boycotting, tortious interference with a business, or unlawful restraint of trade.

¶11 As noted in *Maloney*, "the focus of the legal inquiry is on the intentional acts of the 'malicious interloper' in disrupting a business relationship. . . . Under this theory, 'a person who is involved in an economic relationship with another, or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct which is intended to disrupt the relationship.' " *Maloney*, ¶ 42 (citations omitted). Richard failed to present any evidence that any employees of the defendants were involved in an economic relationship with him or were pursuing prospects of entering into such a relationship. As a result, Richard has failed to establish the necessary elements of his claim for tortious interference with a business.

¶12 Richard also appeals the court's dismissal of his claim that defendants committed a prima facie tort. Richard argues that the defendants "show[ed] an intentional malicious act to harm [him] for simply exercising [his] rights to use the courts and make complaints

6

to governmental agencies." Acknowledging that this Court has not recognized a separate cause of action for prima facie tort, he urges us to conclude that his case "is the perfect case for such a claim." Again, as defendants point out, Richard's claim requires that defendants committed some intentional wrongful act. While Richard has made numerous conclusory statements, he has presented no evidence of a wrongful act that could support his claim.

¶13 As did the District Court, we conclude that Richard failed to establish that the defendants committed any unlawful or wrongful acts; therefore, his conspiracy claims pertaining to employment, interference with his businesses, and prima facie tort must fail.

¶14 Lastly, Richard appeals the District Court's grant of summary judgment in favor of PPL on his blacklisting claim. However, Richard presented no evidence, other than his own deposition, that PPL blacklisted him within the three-year statute of limitations set forth in § 27-2-204, MCA, or at any other time. The District Court determined that without the presentation of evidence that PPL engaged in blacklisting, Richard failed to establish that a genuine issue of material fact vis-à-vis this issue existed. Without a genuine issue of material fact, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c).

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The

issues in this case are legal and are controlled by settled Montana law which the District Court correctly interpreted.  We therefore affirm the District Court.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE